JOYCE PURCELL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27793-83.     Filed February 26, 1986.

*Alan L. Cates*, for the petitioner.
*Robert P. Crowther*, for the respondent.

SCOTT, *Judge*: Respondent determined deficiencies in petitioner's income tax for the calendar years 1977 and 1978 in the amounts of $82,955.89 and $49,749.21, respectively. The issue for decision is whether petitioner is relieved from liability under section 6013(e)[1] with respect to the income tax resulting from (1) the inclusion in the income of petitioner and her then husband of (a) dividends resulting from amounts paid by a corporation of which they were stockholders for personal travel and entertainment expenses, and (b) a portion of the sales price of petitioner's stock in another corporation allocated to a covenant not to compete; and (2) the disallowance of claimed bad debt and worthless stock deductions with respect to a third corpora-

---

[1] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years here in issue.

tion in which both petitioner and her then husband owned stock.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner, who resided in Franklin, Tennessee, at the time of the filing of her petition in this case, filed a joint Federal income tax return with her then husband, W. Bruce Purcell, for each of the calendar years 1977 and 1978 with the Director, Internal Revenue Service Center, Memphis, Tennessee. For the calendar year 1977, they filed an amended Federal income tax return on Form 1040X.

Petitioner and W. Bruce Purcell were married on July 23, 1952, and were divorced in October 1982. W. Bruce Purcell died, by accidental drowning, in July 1983. During the years 1977 and 1978, both W. Bruce Purcell and petitioner were stockholders and employees of Purcell Enterprises, Inc. This company was run primarily by Mr. Purcell, and petitioner's duties were limited to signing checks on the corporation's bank account when Mr. Purcell was out of town and some typing and clerical work when her services were needed in the office. She did not deal with the corporate customers. The company had an American Express account and each of the officers of the company, including Mr. Purcell, had an American Express Card in his name on this account. Petitioner had a company American Express Card in her name, permitting her to make charges to the account of Purcell Enterprises, Inc.

Petitioner occasionally accompanied her husband on trips and at his request charged the cost of the hotel room that she and her husband used and other costs of the trip on the corporate American Express Card issued in her name. Other than the charges made on the card at her husband's request, petitioner made only a few charges on the company American Express Card. Occasionally she made other charges on this card and did not keep a record or diary of the charges she made. Petitioner discussed the use of this card with Mr. Purcell and was told by him that he would take care of the charges she made for personal purposes, because the corporation always owed him money. Petitioner

charged a few meals in Nashville to this credit card and charged lodging in Knoxville, where her children were in school, to this credit card. Petitioner also charged a small purchase of foreign currency to this credit card.

In February 1974, a corporation, International Demolition & Salvage Co., Inc. (International Demolition), was formed under the laws of the State of Tennessee. During the years 1977 and 1978, petitioner and W. Bruce Purcell each owned 25 percent of the outstanding stock of International Demolition. Petitioner was the treasurer of International Demolition during 1977 and 1978 and was a corporate director in these years. International Demolition had a sustained history of losses throughout its existence. It was in financial difficulties in 1977 and 1978 and ultimately failed. Petitioner's then husband, W. Bruce Purcell, and other shareholders of International Demolition infused money into the corporation in 1976, 1977, and 1978, which moneys were treated on the corporate books as loans to the corporation.

Reese Tires, Inc., was a corporation the stock of which was owned by petitioner and Mr. Ira Reese. As of April 15, 1977, petitioner owned 560 shares of the stock of Reese Tires, Inc., and Mr. Reese owned 480 shares of the stock of that corporation. Under date of April 15, 1977, petitioner, W. Bruce Purcell, and Ira Reese entered into an agreement to sell petitioner's and Mr. Reese's stock in Reese Tires, Inc., to Universal Tire, Inc., a Tennessee corporation. The sales agreement was negotiated by Mr. Purcell and Mr. Reese. Petitioner did not participate in the negotiation for the sale of the stock of Reese Tires, Inc., to Universal Tire, Inc. However, she did sign the agreement and initialed the agreement in several places where changes were made. One of the changes initialed by petitioner was in a clause agreeing that neither petitioner, Mr. Purcell, nor Mr. Reese would compete with Universal Tire, Inc., in the tire business for a period of 3 years in specified locations. One of the changes made in the agreement by pen, which was initialed by petitioner, was changing 5 years to 3 years in this clause of the agreement.

The income tax returns of petitioner and her then husband for the years 1977 and 1978 were prepared by a certified public accountant. Except for certain items of

medical expenses and charitable contributions and other types of personal items, none of the information used in the preparation of the returns was furnished to the CPA by petitioner. Most of the information used by the CPA in preparing the joint returns of petitioner and her then husband for the years 1977 and 1978 was obtained by the CPA from a Mr. John H. Moses who was the comptroller of both Purcell Enterprises, Inc., and International Demolition. If the CPA needed additional information or to clarify information he had, generally he would ask a question of the comptroller and if the comptroller could not answer the question, he would attempt to get the information from Mr. Purcell. The CPA very seldom consulted with Mr. Purcell and did not consult at all with petitioner. When the CPA prepared the returns, he was of the opinion that he had sufficient information to prepare the returns correctly. The CPA made no audit of the records of petitioner or Mr. Purcell in preparing their individual income tax returns, but prepared the returns from information furnished to him. Petitioner did not review the returns prepared by the CPA.

Petitioner personally guaranteed certain notes of her then husband, W. Bruce Purcell, to banks in Nashville, Tennessee, for loans made to him.

Petitioner's primary occupation was as a housewife. She married Mr. Purcell shortly after she graduated from high school. She worked after they were married to assist Mr. Purcell with his college education. When petitioner signed the guarantees of her husband's loans, he told her that his businesses had sufficient assets to pay off these business debts.

There were problems in connection with petitioner's marriage during 1977 and 1978. Mr. Purcell was away from home during much of the time in these years and was drinking heavily. He also was seeing the woman whom he married after he and petitioner were divorced in 1982.

In the divorce decree, a recitation is made that petitioner and Mr. Purcell had lived apart since 1979. In the divorce decree there was incorporated a property settlement agreement between petitioner and Mr. Purcell. In the property settlement agreement, petitioner received the family home, which was free and clear at the time, and the furnishings of

that home. She also received an automobile. The agreement provided for certain cash payments by Mr. Purcell to petitioner over a period of 121 months. Paragraph 7 of the agreement provided as follows:

7. That HUSBAND shall keep in full force and effect and pay all necessary premiums for three (3) certain policies of insurance with the New York Life Insurance Company, being Policy Numbers 33-002-776, 36-402-141, and 36-426-995, in the total face amount of Nine Hundred Thousand ($900,000.00) Dollars, which policies of insurance are owned by and payable to WIFE as beneficiary to secure this agreement, and further HUSBAND shall keep in full force and effect and pay any and all necessary premiums for a major medical hospitalization insurance program in at least the amount of Fifty Thousand ($50,000.00) Dollars and both collision and liability insurance for WIFE in the operation of any vehicle or conveyance of any nature whatsoever in at least the amount of Three Hundred Thousand ($300,000.00) Dollars until the death or remarriage of WIFE or for said One Hundred Twenty-One months from July 1, 1982 to July 1, 1992.

The property settlement agreement also transferred to petitioner 15 cemetery lots in Woodlawn Memorial Park in Nashville, Tennessee, and Mr. Purcell's interest in 6 parcels of real estate specifically described in the agreement, some of which were owned jointly by Mr. Purcell and others. The agreement provided that Mr. Purcell would execute a note in the amount of $121,000 to petitioner to secure the payment of the principal sum of $121,000 as periodic alimony in monthly installments of $1,000 each for 121 months, beginning on July 1, 1982, and continuing through July 1, 1992, unless petitioner dies or remarries prior to the date of the last payment. The property settlement agreement also provided for the transfer by Mr. Purcell of certain certificates of stock in the bank of Maryville, Tennessee, to petitioner. The only property granted to Mr. Purcell by the agreement, other than his personal effects which he was to remove from the family residence, was all right, title, and interest which petitioner had in any business interests of Mr. Purcell, including but not limited to Purcell Enterprises, Inc. Mr. Purcell assumed the responsibility and liability for all outstanding debts and bills with respect to his business operations, particularly including indebtedness to the Third National Bank of Nashville, Tennessee, and the Continental National American Insurance & Bonding Co.

with regard to the bonding of construction contracts in Mr. Purcell's business. Mr. Purcell agreed to hold petitioner harmless with respect to all indebtednesses which he had incurred or which were incurred in connection with his businesses.

Respondent in his notice of deficiency increased the reported income of Mr. Purcell and petitioner by $17,750 in 1977 and $5,298.69 in 1978 as nonbusiness bad debts from Reese Tires, Inc., which were not allowable since it had not been established that they became worthless in 1977 or 1978. For the years 1977 and 1978, respectively, respondent increased petitioner's reported income by $144,411.26 and $95,185.05 because of disallowance of claimed deductions of bad debts of International Demolition on the ground that the debts did not become worthless in 1977 or 1978 or otherwise represent an allowable deduction, and also increased the reported income by $26,904.85 in 1977 by disallowance of a claimed long-term capital loss from worthless stock of International Demolition on the ground that it had not been established that the stock became worthless in that year. Respondent increased the reported income of Mr. Purcell and petitioner by $28,258.10 in 1977 and $25,575.65 in 1978 with the explanation that the items represented dividends under sections 301 and 316 of the Internal Revenue Code because of benefits received from the permitted use of corporate property without compensation. The explanation of these items showed that in 1977, $7,675.08 was from personal use of aircraft and $20,583.02 from payment of personal travel and entertainment expenses and that in 1978, $8,681.03 was from personal use of aircraft and $16,894.62 from payments by Purcell Enterprises, Inc., of personal travel and entertainment expenses.

Respondent in 1977 increased Mr. Purcell's and petitioner's reported income by $15,300, explaining that this was the amount of the purchase price of the stock of Reese Tires, Inc., paid by Universal Tire, Inc., for the purchase of a covenant not to compete and therefore should have been shown as ordinary income on the tax return. Respondent made a compensating adjustment in petitioner's 51 percent share of the payment from Universal Tire, Inc., which had been reported as gain from the sale of the stock. In

addition, respondent made certain other minor adjustments with respect to interest deductions and a change in the amount of a bad debt loss which have not been placed in issue in this case.

Petitioner, at the trial, conceded that the adjustments made by respondent in the deficiency notice were correct for the purpose of this case, stipulating that—

petitioner intends to limit her challenge to the adjustments made by the Commissioner in his notice of deficiency to whether I.R.C. sec. 6013(e), as amended by sec. 424 of the Tax Reform Act of 1984, Pub. L. No. 98-369, 98 Stat. 494, 801-803, affords her relief as an innocent spouse.

At the trial, petitioner's counsel stated that petitioner was unable to question the adjustments made by respondent because of lack of knowledge of the transactions.

OPINION

Section 6013(e), as amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802 (1984-3 C.B. 309-310),[2] provides that a spouse is relieved of liability

---

[2] Sec. 6013(e), as amended by the Tax Reform Act of 1984, provides as follows:

SEC. 6013(e). SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.—

(1) IN GENERAL.—Under regulations prescribed by the Secretary, ifd/m

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

(2) GROSSLY ERRONEOUS ITEMS.—For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse—

(A) any item of gross income attributable to such spouse which is omitted from gross income, and

(B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.

(3) SUBSTANTIAL UNDERSTATEMENT.—For purposes of this subsection, the term "substantial understatement" means any understatement (as defined in section 6661(b)(2)(A)) which exceeds $500.

(4) UNDERSTATEMENT MUST EXCEED SPECIFIED PERCENTAGE OF SPOUSE'S INCOME.—

(A) ADJUSTED GROSS INCOME OF $20,000 OR LESS.—If the spouse's adjusted gross income for the preadjustment year is $20,000 or less, this subsection shall apply only if the liability described in paragraph (1) is greater than 10 percent of such adjusted gross income.

(B) ADJUSTED GROSS INCOME OF MORE THAN $20,000.—If the spouse's adjusted gross

under regulations prescribed by the Commissioner where a joint return has been made for a taxable year and on that return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, if the other spouse establishes that in signing the return she did not know, and had no reason to know, that there was such substantial understatement, and taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for the taxable year attributable to such substantial understatement.

Grossly erroneous items are defined to mean "any item of gross income attributable to such spouse which is omitted from gross income" and "any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law." Sec. 6013(e)(2)(A) and (B). Substantial understatement "means any understatement * * * which exceeds $500." Sec. 6013(e)(3).

There is a further provision requiring that the understatement must exceed a specified percentage of the income for the pre-adjustment year of the spouse claiming the benefit of the statute. However, the parties in this case have stipulated facts which clearly show that petitioner's income for the pre-adjustment year was such that this requirement is met.

Respondent apparently admits that petitioner has met the requirements of section 6013(e), as amended, with respect to omission of income resulting from the determination of a dividend to petitioner's former husband because of personal use of an aircraft, although he argues generally that petitioner has failed to show that it would be inequitable to hold her liable for the total deficiency in this case.[3] Also,

---

income for the preadjustment year is more than $20,000, subparagraph (A) shall be applied by substituting "25 percent" for "10 percent."

(C) PREADJUSTMENT YEAR.—For purposes of this paragraph, the term "preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed.

[3] Respondent in his brief states as follows:

"The fourth area of adjustment involves income realized by petitioner's husband from his personal use of an airplane maintained by Purcell Enterprises, Inc. The respondent concedes that the petitioner is an innocent spouse with respect to said income.

"At the start of the trial the court asked whether it was respondent's view that a determination of innocent spouse status with respect to omitted income items could be made separately from a determination of innocent spouse status with respect to disallowed deduction items. It is respondent's position that the two areas of adjustment, i.e., omitted

respondent does not claim that the items on which petitioner claims relief as grossly erroneous items were not items of Mr. Purcell. Respondent contends that petitioner either knew, or had reason to know, that Purcell Enterprises, Inc., was paying personal expenses of petitioner and her then husband. Respondent contends that petitioner did in fact know that there had been a covenant not to compete signed with respect to the sale of the stock of Reese Tires, Inc., and that all petitioner has shown with respect to the income allocable to the covenant not to compete is that she did not know the tax effect of such a covenant being part of a contract for the sale of stock.

Petitioner takes the position that she did not know, and had no reason to know, of the omission from income of any of the items determined by respondent to have been omitted. Petitioner further takes the position that she did not know, and had no reason to know, of the claimed deductions for bad debts and worthless stock in connection with International Demolition and that the requirement of the item being grossly erroneous is met in that the claimed deductions are in an amount for which there is no basis in fact or law. Her position is that her failure to contest the determination of respondent that the claimed bad debt losses and worthless stock deduction are not allowable is sufficient to show that the deduction items are grossly erroneous.

Respondent argues that petitioner knew or certainly had reason to know of the claimed bad debt loss and worthless stock deductions, that these deductions are not grossly erroneous items as defined in section 6013(e)(2)(B) since they did have some basis in fact and law, and in any event petitioner has not established to the contrary. Respondent also argues that it would not be inequitable to hold petitioner liable for the deficiency resulting from the disal-

income and disallowed deductions, may be considered separately in determining whether petitioner is an innocent spouse."

Because of these two concessions by respondent, it is clear that respondent agrees with petitioner that under sec. 6013(e), as amended, individual items of income or deductions may be separately considered in determining whether there is a substantial understatement of tax attributable to grossly erroneous items of one spouse. Since petitioner approached her case on an item-by-item basis, we do not consider there to be an issue in this case as to whether different items of income and deduction may be separately considered in determining whether a taxpayer is entitled to any relief as an "innocent spouse."

lowance of these claimed deductions under the facts and circumstances of this case.

In our view, petitioner did not know or have reason to know that personal expenses and personal travel were being paid for by Purcell Enterprises, Inc., and therefore did not know, or have reason to know, of the omission of these items from the joint tax returns she filed with her then husband. The record shows that petitioner had an American Express Card of Purcell Enterprises, Inc., which she used to pay travel expenses for herself and her husband when her husband was on a business trip. The record also shows that she used this card for certain personal items. However, the testimony shows that her husband represented to her that amounts charged on the American Express Card of Purcell Enterprises, Inc., had to be justified as company expenses in order to be paid by the company and that any personal expenses which petitioner put on the card were being paid by him personally and not by the company. In fact, the company comptroller testified that charges on the company's American Express Card were required to be justified in order for him to authorize payment by the company, and in connection with charges involving the Purcells, he looked to Mr. Purcell for justification. Under the circumstances, we conclude that petitioner did not in fact know that the personal charges she put on the Purcell Enterprises, Inc., American Express Card were being paid for by the company rather than by her then husband and did not know that he was charging personal items to the company credit card.

In our view, petitioner must have known in connection with the sale of the Reese Tires, Inc., stock that the contract of sale contained a covenant not to compete. Although she did not assist in negotiating the sale, she was the owner of the stock and a signatory to the contract. One of the persons to whom the noncompete provision applied was petitioner and another was her then husband, Mr. Purcell. Not only did petitioner sign the contract, she initialed a change in the years for which the covenant not to compete was effective. Petitioner never specifically testified that she did not read the agreement with respect to the sale of stock that she signed, although she testified that her

husband did all the negotiating. In our view, the evidence here does not support lack of knowledge on the part of petitioner with respect to the terms of the contract for the sale of the stock of Reese Tires, Inc. Certainly petitioner did not know the legal effect of the provision with respect to a covenant not to compete. However, the cases are clear that the spouse claiming to be relieved from liability for omission from income of an item must be unaware of the circumstances which give rise to that omission and not merely to the tax consequences of the facts. *McCoy v. Commissioner*, 57 T.C. 732 (1972); *Quinn v. Commissioner*, 62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975); *Smith v. Commissioner*, 70 T.C. 651, 672-673 (1978). As we pointed out in the *Smith* case, it is immaterial that both spouses were unaware of the tax liability created by the transactions of which they were aware. Here, we do not know whether Mr. Purcell was aware of the tax liability created by a part of the amount paid under the contract for sale of the Reese Tires, Inc., stock being allocable to a covenant not to compete, but it is clear that petitioner did not know the tax consequences of having this provision in the contract. However, this is immaterial since we conclude that the evidence shows that she did know that the noncompete agreement was in the contract.

The record is clear that petitioner did know of loans made by her then husband to International Demolition. From the evidence we conclude that she did not examine the returns sufficiently to know that these amounts had been deducted in 1977 and 1978 as worthless debts on the joint returns she filed with her then husband. We also conclude that she did not examine the returns sufficiently to know that there had been a deduction for worthless stock of International Demolition taken as a deduction on the returns. However, petitioner has made no showing as to the circumstances which caused these items to be deducted. The accountant testified that he thought when he prepared the joint returns of petitioner and her then husband that all items in the returns were accurate. Certainly under these circumstances he must have done some investigation of the financial condition of International Demolition. The record shows that this company was in bad financial condition. In our

view, petitioner's conceding that respondent's adjustments with respect to the worthless stock and bad debt deductions are correct is not sufficient to establish that the claimed deductions were in an amount for which there was no basis in fact or law. If the statute had intended that a mere concession that respondent was not in error in disallowing a claimed deduction was sufficient to cause the item to be grossly erroneous as having no basis in fact or law, it would have so provided.

Prior to the amendment of section 6013(e) by Pub. L. 98-369 in 1984, no relief was granted where the deficiency was because of the disallowance of claimed deductions. *Resnick v. Commissioner*, 63 T.C. 524 (1975); *Allen v. Commissioner*, 61 T.C. 125, 132 (1973), affd. on this issue and revd. on another issue 514 F.2d 908, 915 (5th Cir. 1975). In explaining the reason for the change in the law with respect to disallowed deductions made by Pub. L. 98-369, in 1984, the House committee report states that—

The Committee believes that the present law rules relieving innocent spouses from liability for tax on a joint return are not sufficiently broad to encompass many cases where the innocent spouse deserves relief. Relief may be desirable, for example, where one spouse claims phony business deductions in order to avoid paying tax and the other spouse has no reason to know that the deductions are phony and may be unaware that there are untaxed profits from the business which the other spouse has squandered. [Supplemental Report of Comm. on Ways and Means, H. Rept. 98-432 (Pt. 2), on H.R. 4170 (Tax Reform Act of 1984), at 1502 (1984).]

This report further states with respect to the changes in the bill as follows:

Under the bill, the innocent spouse (sec. 6013(e)) rule will apply to cases in which the tax liability results from a substantial understatement of tax that is attributable to grossly erroneous items (including claims for deductions or credits, as well as omitted income) of the other spouse. Grossly erroneous items include any item of income that is omitted from gross income, regardless of the basis for omission. A claim for deduction or credit will be treated as a grossly erroneous item only if the claim had no basis in law or fact. The bill defines a substantial understatement as any understatement of tax that exceeds $500. As under present law, relief may be granted only where it would be inequitable to hold the innocent spouse liable.

It is clear from the statute itself, and made even clearer by the committee reports, that whereas any omission of income resulting in an understatement of tax in excess of $500 is to be considered a grossly erroneous item, only deductions without a basis in fact or law are to be considered grossly erroneous. Therefore, in order to be relieved from tax resulting from a disallowed deduction, it is incumbent on a taxpayer to prove that the claimed deduction not only is not properly allowable but that it has no basis in fact or law. To establish that the deduction is a grossly erroneous item under this definition is part of the burden of a taxpayer claiming to be an innocent spouse.

Here, petitioner has made no showing that the bad debt deductions which were disallowed by respondent and the worthless stock deduction that was disallowed had no basis in fact or law. All that has been shown is that she did not contest the adjustments as made by respondent. In fact, the evidence that is in the record with respect to these items indicates that they were not "grossly erroneous" from the standpoint of being "phony" deductions. The record shows that loans had been made by petitioner's husband to International Demolition and that that company was in bad financial condition in 1977 and 1978. The accountant who prepared the joint returns of petitioner and her then husband testified that he thought he had sufficient information to justify the items shown on the returns, and the comptroller of Purcell Enterprises, Inc., who also handled the books of International Demolition, testified that he had furnished information to the accountant.

Under the facts of this case, there has been no showing that the claimed deductions had no basis in fact or law. They were not "phony" deductions as referred to in the committee report. We therefore conclude that petitioner is not an innocent spouse with respect to the claimed bad debts and worthless stock deductions.

Since respondent has conceded that petitioner is an "innocent spouse" with respect to the constructive dividends received by her husband from the private use of the airplane owned by Purcell Enterprises, Inc., and we have concluded that petitioner did not know, or have reason to know, of the constructive dividends from the payments by

that corporation of personal bills and travel, it is necessary for us to determine whether it would be inequitable to hold petitioner liable for the deficiency in tax attributable to these understatements of income.

Whereas the law prior to the 1984 amendment specifically referred to whether the spouse claiming relief from tax significantly benefited from the omissions from income, the present law does not specifically contain this provision. However, even though the present statute does not specifically refer to the other spouse receiving substantial benefits from the omissions or wrongfully claimed deductions, in our view it would not be inequitable to hold the other spouse liable for the deficiency if such substantial benefits were received. Therefore, we deem it necessary to determine whether petitioner received substantial benefits from the omission of the constructive dividends from the income reported on the returns.

The record shows no benefit to petitioner from her husband's use of the company plane and only very minor benefits received by petitioner from the payment by Purcell Enterprises, Inc., for a few meals and some lodging she charged to the American Express Card issued in her name. Certainly these benefits were not substantial. The record also shows that under the agreement incident to her divorce from Mr. Purcell, petitioner received most of the property accumulated during the marriage of the parties and, in addition, Mr. Purcell was required to keep insurance policies payable to her in force to ensure periodic payments. Petitioner testified at the trial that the property which she received in the divorce settlement had been acquired by her and Mr. Purcell long before the years here in issue and that prior to the years here in issue, she was actually the owner of the insurance policies which Mr. Purcell was required to keep in effect, and had paid the premiums on these policies. She testified that she did not receive the periodic payments required under the agreement. Although not precisely shown in the record, petitioner apparently did receive the proceeds of the insurance policies upon Mr. Purcell's death. She testified about the requirement she was facing of paying Mr. Purcell's debts which she had guaranteed.

Petitioner claims that she did not substantially benefit from the various items of omitted income.

Since we have held that petitioner is not entitled to relief under section 6013(e) for the omitted income from the covenant not to compete or from the disallowance of the deductions for bad debts and worthless stock, we need only consider whether it would be inequitable to hold petitioner liable for the tax on the omitted income from constructive dividends. The regulation in effect with respect to the prior law provided, in section 1.6013-5(b), Income Tax Regs., that whether it is inequitable to hold a person liable for the deficiency in tax is to be determined on the basis of all the facts and circumstances.[4] This section of the regulations states that in making the determination, a factor to be considered is whether the person seeking relief significantly benefited, directly or indirectly, "from the items omitted from gross income." This regulation goes on to say that normal support is not to be considered a significant benefit. It further refers to a person seeking relief receiving from his spouse "an inheritance of property or life insurance proceeds which are traceable to items omitted from gross income by his spouse."

Here, the record shows that the property received by petitioner in the divorce proceeding had been acquired in years prior to the years here in issue. Petitioner had paid the insurance premiums prior to her divorce from Mr. Purcell. The omitted income was from personal items paid by Purcell Enterprises, Inc. Clearly, the use of the airplane by Mr. Purcell for personal purposes in no way benefited petitioner, and the Government apparently does not contend

---

[4] Sec. 1.6013-5(b), Income Tax Regs., provides as follows:

(b) *Inequitable defined.* Whether it is inequitable to hold a person liable for the deficiency in tax, within the meaning of paragraph (a)(4) of this section, is to be determined on the basis of all the facts and circumstances. In making such a determination a factor to be considered is whether the person seeking relief significantly benefitted, directly or indirectly, from the items omitted from gross income. However, normal support is not a significant "benefit" for purposes of this determination. Evidence of direct or indirect benefit may consist of transfers of property including transfers which may be received several years after the year in which the omitted item of income should have been included in gross income. Thus, for example, if a person seeking relief receives from his spouse an inheritance of property or life insurance proceeds which are traceable to items omitted from gross income by his spouse, that person will be considered to have benefitted from those items. Other factors which may also be taken into account, if the situation warrants, include the fact that the person seeking relief has been deserted by his spouse or the fact that he has been divorced or separated from such spouse.

to the contrary. Although petitioner may have received some small benefit from the payment of travel and entertainment expenses by the corporation, from her testimony it is reasonably clear that whatever benefit she received was not significant. She only occasionally went on trips with Mr. Purcell and made insignificant charges on her American Express Card which she thought Mr. Purcell was personally paying.

Based on the record as a whole, we conclude that petitioner did not significantly benefit from the constructive dividends received by Mr. Purcell from Purcell Enterprises, Inc., because of the payment by that corporation of personal expenses for meals, travel and entertainment for Mr. Purcell and, to some extent, for petitioner. We therefore conclude that with respect to the entire constructive dividends from Purcell Enterprises, Inc., in each of the years here in issue, petitioner is entitled to relief under section 6013(e).

*Decision will be entered under Rule 155.*