ALAN B. KNAPP AND DONNA KNAPP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DONNA J. KNAPP, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Knapp v. Commissioner
Docket Nos. 25462-84; 23507-85.
United States Tax Court
T.C. Memo 1988-109; 1988 Tax Ct. Memo LEXIS 139; 55 T.C.M. (CCH) 380; T.C.M. (RIA) 88109; March 14, 1988. James E. Spurr, Vernon Bennett III, and John A. Campbell, for petitioner Donna J. Knapp. Margaret Satko, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners Alan B. Knapp and Donna J. Knapp in the amounts of $ 35,652.75 for 1980 and $ 18,329 for 1981. By order dated November 12, 1985, the Court dismissed docket No. 25462-84 as to Alan B. Knapp for lack of prosecution. Petitioner Donna J. Knapp concedes *141 the correctness of the adjustments made in the notices of deficiency for both years subject to modifications made in a partial settlement agreement filed November 12, 195, and a stipulation filed in this proceeding. The issues for decision are (1) whether petitioner Donna J. Knapp qualifies under section 6013(e) [1] as an innocent spouse entitled to relief from liability for the deficiencies for 1980 and 1981 and (2) whether the elevated interest rate prescribed by section 6621(c) [2] is applicable to the underpayments for those years. FINDINGS OF FACT Petitioner Donna J. Knapp (hereinafter petitioner) [3] resided in Richland, Michigan, at the time of filing the petitions. Petitioner and Alan B. Knapp (Knapp) were married *142 on June 27, 1975 and divorced on December 15, 1983. After she was married to Knapp, petitioner filed joint tax returns with him for 1975 through 1982. Petitioner understood the importance of filing Federal income tax returns and was aware of the requirement that information contained in such returns be correct. Petitioner further understood that, if the information was not correct, the Internal Revenue Service could conduct an audit and assess an additional sum. During 1975 through 1982, Knapp owned and operated Grand Rapids Auto Auction (Auction), a subchapter S corporation. During 1979 through 1981 petitioner worked at the Auction. She ran the cafeteria and hot dog stand and performed other miscellaneous duties. Petitioner received wages from the Auction only during 1980. Petitioner never owned stock in the Auction, was never an officer or director, and never participated in management decisions. In 1975, petitioner and Knapp moved into a roughly finished two-bedroom summer cottage at 12180 East "D" *143 Avenue, Richland, Michigan. The home was furnished with used furniture. Over the years, they improved the cottage and built an addition to make the structure suitable for year-round living. Petitioner, her parents, and her children constructed the addition and completed the improvements, and Knapp paid for the materials. Petitioner did all of the yard work; she mowed the lawn and shoveled the snow. From 1979 forward, the marital relationship between Knapp and petitioner deteriorated. They did not get along well and did not communicate. On October 8, 1980, petitioner filed a Complaint for Divorce from Knapp. During the period between the filing of the Divorce Complaint and March 7, 1983, Knapp and petitioner attempted to reconcile their differences and put their marriage back together. On April 14, 1981, petitioner signed and filed jointly with Knapp a Federal income tax return for 1980 showing losses from Smith Oil Limited and Jonquil Limited in the amounts of $ 45,618 and $ 21,207, respectively. Knapp and petitioner claimed and received a refund on their 1980 Federal income tax return, in the amount of $ 5,415.80, which was applied to their 1981 estimated tax liability. *144 On April 8, 1982, petitioner signed and filed jointly with Knapp a Federal income tax return with respect to 1981, claiming a loss from Jonquil Limited in the amount of $ 21,081. On May 3, 1982, petitioner signed and filed jointly with Knapp an Amended U.S. Individual Income Tax Return, Form 1040X, with respect to 1981, claiming a loss from Smith Oil Limited in the amount of $ 14,233. On August 2, 1982, Knapp and petitioner received a refund in the amount of $ 7,091, pursuant to the claim made on their Amended U.S. Individual Income Tax Return, Form 1040X, filed with respect to 1981. The partnership losses from Jonquil Limited and Smith Oil Limited, claimed on the 1980 an 1981 joint income tax returns of Knapp and petitioner were grossly erroneous items of Knapp. On August 6, 1982, the Circuit Court for the County of Kalamazoo (hereinafter the circuit court) ordered that the divorce proceeding between petitioner and Knapp be dismissed in accordance with their stipulation. On March 7, 1983, the circuit court issued its Order to Set Aside the Order of Dismissal and to Reactiviate Case pursuant to stipulation by the parties. On December 15, 1983, the circuit court entered *145 a Judgement of Divorce dissolving the marriage of Knapp and petitioner. As part of the judgement, the circuit court equally divided the property held by Knapp and petitioner and awarded petitioner periodic support payments of $ 300 per week for 260 weeks totalling $ 78,000. As part of the property settlement, the circuit court ordered that petitioner should have as her sole and separate property: (a) The cottage and surrounding property at 12180 East "D" Avenue, Richland, Michigan, (this property was valued at $ 83,000); (b) The checking and savings accounts in petitioner's name, including a cash equivalent fund; (c) The 1982 Federal income tax refund in the amount of $ 17,836; (d) Her personal effects, clothing, and jewelry; (e) Household goods, furnishing, appliances, and other personal property at 12180 East "D" Avenue, Richland, Michigan; (f) Either the 1981 Buick Skylark which petitioner was then driving or $ 5,000, the value of the automobile; and (g) The sum of $ 60,250, payable by Knapp, $ 10,250 immediately and $ 50,000 in accordance with a provision, described below, concerning tax liability. The circuit court further ordered that Knapp should have as *146 his sole and separate property: (1) Any and all interest in the Grand Rapids Auto Auction, Inc.; (2) The interest in certain contracts and a promissory note related to a sale of stock of Grand Rapids Auto Auction, Inc.; (3) The proceeds from the sale of the Chime Street property in the sum of $ 8,682, plus all interest earned thereon in an account at the Fidelity Federal Savings & Loan Association; (4) 170 shares of Fruehauf stock; (5) The $ 7,091 from the 1981 Federal income tax refund, the Individual Retirement Account in his name, and the savings and checking accounts in his name; (6) His personal effects, clothing, and jewelry, and his mother's jewelry; and (7) Household goods, furnishings, appliances, and other personal property in his possession. In addition, the circuit court ordered each party to share equally their 1976, 1977, 1989, 1980 and 1981 Federal income tax liabilities which were then in dispute. In furtherance thereof, the circuit court ordered that Knapp retain $ 50,000 of the cash awarded to petitioner until their tax liabilities had been settled. Knapp's Auction stock was to be delivered to an escrow agent who was to hold it as collateral for *147 the payment of the $ 50,000. The Judgement of Divorce further provided that "Upon receipt of proof that Defendant [Knapp] has paid the sum of $ 50,000.00 directly to Plaintiff [petitioner], the appropriate governmental agencies, or a combination thereof, Escrow Agent shall promptly return all instruments held hereunder to Defendant [Knapp]." The Judgment of Divorce provided that if the tax liabilities ultimately determined exceed the $ 50,000, the parties shall share equally in their payment; that if liabilities are less than $ 50,000, Knapp shall pay the remainder to petitioner; and that if there are liabilities for other years, they are to be the joint and several liability of petitioner and Knapp. The judgment further provided that each party shall hold the other harmless for said party's equal share of the State and Federal taxes and shall reimburse the other party for any loss suffered by failure to do so, and that defendant Knapp shall pay all professional fees in connection with the tax determinations. In May 1984, Knapp paid petitioner the $ 50,000 referred to in the Judgement of Divorce and the escrow agent released Auction's stock to him even though the joint *148 Federal income tax liabilities for the taxable years 1976, 1977, 1979, 1980 and 1981 had not been settled. Petitioner used this $ 50,000 to pay for living expenses, to pay off the mortgage on her house, to replace the roof and furnace, and to install an underground sprinkler system. Petitioner received $ 7,000 of the $ 78,000 awarded by the circuit court to her as rehabilitative alimony. All alimony payments ceased once Knapp had received the Auction stock which had been placed in escrow against his $ 50,000 obligation to plaintiff designated by the divorce judgment for use in paying tax liabilities. The whereabouts of Knapp were unknown at the time of the trial. Knapp has been adjudged in contempt pursuant to a circuit court order for failure to comply with the terms of the divorce judgment and there is an outstanding bench warrant for his arrest. It is stipulated that respondent correctly determined that Knapp and petitioner were not entitled to claimed Schedule E losses from Jonquil Limited, in the respective amounts of $ 21,207 and $ 21,081 for 1980 and 1981 and from Smith Oil Limited in the respective amounts of $ 30,314 and $ 13,830. The unallowable losses from *149 Smith Oil Limited and Jonquil Limited claimed by Knapp and petitioner on their 1980 and 1981 returns, resulted in an understatement of their tax liability for 1980 in the amount of $ 29,371 and for 1981 in the amount of $ 17,984. The losses claimed from Smith Oil Limited and Jonquil Limited on the 1980 and 1981 returns of Knapp and petitioner were grossly erroneous, had no basis in law or fact, and were disallowed by reason of section 465, as a sham and for lack of a profit motive. The petitions allege that petitioner qualifies for relief under section 6013(e) as an innocent spouse. OPINION Spouses filing a joint tax return are jointly and severally liable for the tax arising therefrom. Sec. 6013(d)(3). However, as an exception to that rule, if a taxpayer spouse satisfies the requirements of section 6013(e), he or she is relieved from such joint and several liability. In order to invoke the protection of section 6013(e), as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801 (1984-3 C.B. (Vol. 1) 309, [4] petitioner must satisfy all of the following requirements with respect to each taxable year involved: 1. A joint return *150 was filed (section 6013(3)(1)(A); 2. On such return there is a substantial understatement of tax (section 6013(e)(1)(B) and (e)(3)); 3. The substantial understatement is attributable to grossly erroneous items of petitioner's husband (section 6013(e)(1)(B); 4. In signing the return, petitioner did not know, and had no reason to know, that there was such a substantial understatement of tax (section 6013(e)(1)(C)); and 5. Taking into account all the facts and circumstances, it is inequitable to hold her liable for the deficiency in tax attributable to such substantial understatement (section 6013(e)(1)(D)). [5]
*151 A failure to meet any one of these requirements will prevent petitioner from qualifying for relief under section 6013(e). Purcell v. Commissioner,826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Shea v. Commissioner,780 F.2d 561, 565 (6th Cir. 1986), affg. in part and revg. in part a Memorandum Opinion of this Court. The parties have stipulated that in 1980 and 1981 petitioner and her spouse filed joint returns on which there were substantial understatements of tax within the meaning of section 6013(e)(1)(A) an (e)(1)(B). In addition, the parties have stipulated that the partnership losses reported on the 1980 and 1981 returns which give rise to such understatements of tax, are "grossly erroneous items" attributable to Knapp within the meaning of section 6013(e)(2). The requirements which remain for petitioner to establish are: (1) That, in signing the joint returns for 1980 and 1981, petitioner did not know or had no reason to know that the substantial understatements of tax existed, and (2) that, taking into account all of the facts and circumstances, it is inequitable to hold petitioner liable for the *152 deficiencies in tax for 1980 and 1981. We find that petitioner has failed to show that it would be inequitable to hold her jointly and severally liable for the disputed taxes. Because petitioner has not made this essential showing, she does not qualify as an innocent spouse within the meaning of section 6013(e). We express no opinion, therefore, as to whether petitioner knew or had reason to know of the substantial understatements of tax on the joint returns for 1980 and 1981 attributable to the tax shelters. As stated in our findings, the circuit court undertook to divide the property owned by Knapp and petitioner into equal shares. The decree recognized that there was a pending dispute as to their 1976, 1977, 1979, 1980 and 1981 joint and several tax liabilities and made provision for them. Knapp was ordered to retail $ 50,000 of the available cash for use in paying those disputed liabilities. If the tax liabilities ultimately determine exceeded the $ 50,000, the parties were directed to share equally in their payment. If the liabilities were less than $ 50,000, Knapp was ordered to pay the balance to petitioner. If there were liabilities for other years, they were to *153 be the joint and several liability of petitioner and Knapp. To secure Knapp's obligation to pay the $ 50,000, he was required to place his Auction stock in escrow. Upon receipt of proof that Knapp had paid the $ 50,000 directly to petitioner, the appropriate governmental agencies, or a combination thereof, the escrow agent was directed to return the collateral to Knapp. Knapp later paid the $ 50,000 to petitioner and the escrow agent returned the stock to him. In the light of these facts, we do not think it is inequitable to hold petitioner jointly and severally liable for the deficiencies at issue. While they were married, petitioner and Knapp received the benefit of a reduced tax liability by filing joint returns for 1980 and 9181 as well as other years. See Sonnenborn v. Commissioner,57 T.C. 373, 381 (1971). This reduction in their reported tax liability, coupled with the claim of the grossly erroneous tax shelter deductions, made more funds available for the equal division of property between petitioner and Knapp. [6] There is no credible evidence that Knapp absconded with any money or property before the divorce settlement. *154 In addition, Knapp actually turned over to petitioner the $ 50,000 which the circuit court apparently estimated to be the amount of underpayment. She thus received and used the approximate amount of the underpayment for her own purposes. Had she placed this $ 50,000 in an account safeguarded for the payment of the tax, it would now be available for that purpose. There would be no ground for an argument that she should keep the $ 50,000 rather than use it for its original purpose. The fact that she spent it for other purposes does not now tip the equities in her favor. Petitioner argues the equities should be weighed in the light of what she actually received from Knapp rather than what the circuit court decree awarded to her. She points out that the divorce decree awarded her the periodic payments in the total amount of $ 78,000 payable at the rate of $ 300 per week, and she testified that Knapp left the State of Michigan after paying her a total of only about $ 7,000. She has been unable to collect the balance. As we read the divorce decree, however, the periodic payments were alimony which were intended to be taxable to petitioner and deductible by Knapp. They were *155 not part of the property settlement. They were to be paid to discharge his marital obligation. The divorce decree expressly states that "the division of the co-owned property set forth above is a fair and equal division of the co-owned property of the parties and * * * the transfers of property herein ordered do not represent an exchange for the release of any marital obligation, including support, that one party may owe the other." Thus, as we read the decree, the couple's property was divided equally, and the alimony provided for petitioner was over and above her equal share of property. We do not think section 6013(e) was intended to be used to compensate a former spouse, through relief from the statutorily imposed joint and several income tax liability, for the failure of her divorced husband to make his alimony payments or otherwise live up to the divorce decree. In the divorce proceeding, she received an award earmarked for the payment of the taxes here in dispute. We do not think it inequitable that she should use the award for that purpose. We conclude that petitioner does not qualify for the relief provided by section 6013(e). As to the elevated interest rate claimed *156 by respondent under section 6621(c), the Court has denied respondent's motion to amend his answer to make a claim for such interest in docket No. 25462-84 for 1980; in exercising its discretion in this respect, the Court considered the dismissal of the case as to Knapp for lack of prosecution without the assertion of a claim for interest under section 6621(c) and the terms of a partial settlement agreement filed by the parties on November 12, 1985. Petitioner makes no argument that she is not liable for the section 6621(c) elevated interest rate in docket No. 23507-85 for 1981 if we find that she does not qualify as an innocent spouse under section 6013(e). Accordingly, section 6621(c) applies for 1981 but not for 1980. To reflect the foregoing, a partial settlement of petitioner's case, and the dismissal of Knapp's case, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1511(a), 100 Stat. 2744, redesignated sec. 6621(d) as sec. 6621(c). The Act also altered the definition of "tax motivated transaction" to include any "sham or fraudulent transaction" effective for interest accruing after Dec. 31, 1984. We will hereinafter refer to this section as sec. 6621(c). ↩
3. After divorcing Knapp, petitioner remarried and at the time of the trial she identified herself as Donna Jean Passage. The caption of the case was not changed. ↩
4. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (e) Spouse Relieved of Liability in Certain Cases. -- (1) In general. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
then the other spouse shall be relieved of liability for tax including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. ↩
5. Sec. 6013(e)(3) and (4) imposes further requirements with respect to the substantiality of the understatements. The parties have stipulated that the understatements of $ 35,652.75 for 1980 and $ 18,329 for 1981 satisfy these requirements.↩
6. Sec. 6013(e)(1)(D), prior tot he amendment by the Deficit Reduction Act of 1984, provided that a factor to be considered in determining the equitableness of holding a spouse liable for a deficiency in tax is whether that person benefited, directly or indirectly, from the items of omitted gross income. "Evidence of direct or indirect benefit may consist of transfers of property, including transfers which may be received several years after the year in which the omitted item of income should have been included in gross income." Sec. 1.6013-(5)(b), Income Tax Regs.Purcell v. Commissioner,86 T.C. 228, 241 (1986), affd. 826 F.2d 470↩ (6th Cir. 1987). Although no longer an express statutory factor to be considered, the legislative history of the 1984 revision of 6013(e)(1) indicates that personal benefits from a substantial understatement of income is still a factor to be considered in making the equity determination. See H. Rept. No. 98-432 (Part 2) 1501, 1502 (1984).