ROBERT E. HILL AND CHARMAINE D. HILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hill v. Commissioner
Docket No. 36512-86
United States Tax Court
T.C. Memo 1990-367; 1990 Tax Ct. Memo LEXIS 384; 60 T.C.M. (CCH) 163; T.C.M. (RIA) 90367; July 19, 1990, Filed *384 Decision will be entered for the respondent. William A. Porteous, III, for the petitioner Charmaine D. Hill. Stevens E. Moore, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' joint Federal income taxes as follows: Addition to Tax
Year
Deficiency
Section 6653(a) [1]
1978
$  79,372.00
$ 3,968.60
1979
$ 108,342.00
$ 5,417.10
Petitioners omitted items of income and claimed deductions that were disallowed by respondent upon audit as being (1) capital, (2) personal, (3) duplicative, or (4) unsubstantiated expenditures. Petitioner Robert E. Hill and respondent have disposed of all issues relating to such adjustments, and have agreed that the correct deficiencies in and additions to tax are as follows: Addition to Tax
Year
Deficiency
Section 6653 (a)
1978
$  52,627.00
$ 2,631.35
1979
$ 100,864.08
$ 5,043.20
Petitioner Charmaine D. Hill agrees to the corrected amounts of the deficiencies and additions *385 to tax, but contends that she is not liable for their payment because she qualifies as an innocent spouse under the provisions of section 6013(e). Thus, the only remaining issue for decision is whether she is an "innocent spouse" within the meaning of section 6013(e), so that she is entitled to be relieved of the liability for the deficiencies and additions to tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Houma, Louisiana, at the time the petition was filed in this case. Background
Charmaine D. Hill (herein petitioner) completed high school in 1961, attended the University of New Orleans in the spring of 1962, and Southeastern Louisiana University in the fall of 1962. Subsequently, she worked for an oil field construction company preparing payrolls and job costing, and at a bank as a teller. When petitioner met her future husband, Robert E. Hill (herein Mr. Hill), she was working at a bank as a secretary for one of its top vice presidents. Her secretarial duties included preparing the bank's payroll. Mr. Hill had an elementary grade *386 level of formal education. When he met petitioner, he was delivering milk for milk companies. He was then in debt. On May 15, 1972, Mr. Hill acquired a milk and milk products distributorship. He renamed the business Robert E. Hill Distributor (herein REHD) and operated the business as a sole proprietorship. Petitioner assisted Mr. Hill in the business before and after their June 11, 1973, marriage. Her assistance in the business included acquiring at least one bank loan, receiving telephone orders, packing orders for delivery, delivering orders, and writing invoices for products delivered. However, petitioner was not an employee of the business and was never on the business payroll. Petitioner and Mr. Hill did not agree on how to run a business. Specifically, Mr. Hill preferred not to carry insurance and had employed some undesirable persons to work for him. Because of business disagreements, petitioner decided to quit work and return to college, which she did in the fall of 1975. She continued to assist Mr. Hill in packing and delivering dairy products when needed, but devoted the majority of her time to her studies. In 1976 petitioners discharged their old bookkeeper and *387 engaged George Peters (herein Mr. Peters) as REHD's new bookkeeper. Mr. Peters either picked up, or had delivered to his office, the business check stubs, bank statements, invoices that had been paid, and copies of invoices sent to customers. From this information, he prepared financial statements and all tax forms for the business. Mr. Hill did not review any of the work performed by Mr. Peters nor did he spend much time with him. The bookkeeping aspects of business were, for the most part, beyond Mr. Hill's comprehension. Until mid-1978 Mr. Peters dealt almost exclusively with petitioner concerning the bookkeeping aspects of their business. Years in Issue (1978 and 1979)
REHD operated under an exclusive purchase contract with a New Orleans dairy company. In order to purchase and sell more competitively, Mr. Hill deemed it desirable to have another dairy business. However, to sell dairy products within Louisiana, it was necessary to have a "milk license" issued by the State of Louisiana. The milk license for REHD was in Mr. Hill's name. Fearing he would have problems with the Milk Stabilization Board if he had two licenses, Mr. Hill acquired a new license in petitioner's name. *388 Having obtained the necessary license, petitioners began a new dairy business named Offshore Dairy Products (herein ODP) in August 1978. The new business operated as a sole proprietorship with petitioner named as the sole proprietor to avoid reprisals from the New Orleans dairy company with whom Mr. Hill was bound under the exclusive purchase contract. At all relevant times, a separate checking account was maintained in the name of "Robert E. Hill Browns Velvet Dairy Products" and "Offshore Dairy Products" for each respective business. Petitioner had authority to write checks on either business account without Mr. Hill's express authorization. Mr. Hill usually had other persons prepare the majority of checks written on both business accounts for his signature because he could not word large figures. Although petitioner had her own personal checking account, she allowed the majority of the household bills to be paid through the business accounts. She acquiesced in the practice of writing both business and personal checks on the business accounts as long as the check stubs were properly coded "business" or "personal." Moreover, petitioner wrote checks from both business accounts *389 during 1978 and 1979 for both personal and business purposes. The practice of writing business and personal checks from the business accounts caused problems for Mr. Peters. He believed petitioners had the responsibility to code or classify the checks and petty cash receipts as personal or business. They, on the other hand, expected Mr. Peters to properly classify petty cash receipts and the checks from the information recorded on the check stub. However, because a notation on the check stub classifying the expenditure as business or personal was not always present, Mr. Peters or one of his employees would have to call petitioner, Mr. Hill, or someone in the REHD office for more information. In 1978 petitioners moved the business away from their residence to a West Main Street location in Houma and also moved into a new home. During the years in issue, (1) petitioner received a $ 2,520 diamond watch; (2) trees costing $ 2,500 were planted at their residence; (3) petitioners purchased home appliances, furnishings and remodeled their new home; (4) petitioner attended college in Europe for a summer; (5) petitioners took a trip to Disney World; (6) an automobile was purchased for petitioner's *390 daughter and for each of Mr. Hill's two children. All of these expenditures were from the business checking account and expensed on their returns. Petitioner reduced her role in the business in early 1978 and attended college during 1978 and 1979. Occasionally she was reimbursed from the petty cash fund for meals while attending school. By the end of 1979 she had completed all of the accounting courses required for the bachelor of science degree in accounting conferred upon her, with honors, on May 17, 1980. Petitioner was confronted with personal difficulties. Her mother was ill and died subsequent to the years in question. She comforted her sister who was going through a traumatic divorce. Her sister's child was kidnapped by the estranged husband. Petitioner began having marital problems of her own. From 1976 through March 1, 1980, Mr. Peters remained as petitioners' bookkeeper and also prepared their 1978 and 1979 joint Federal income tax returns. Petitioners signed and timely filed their returns reporting income, credits, and expenses from REHD and ODP. The business income reported on the 1978 return was $ 43,910. The business income reported on the 1979 return was $ *391 48,426. Petitioner agrees the 1978 business income was understated by $ 93,224 and the 1979 business income was understated by $ 161,224 on the respective tax returns. Petitioner did not look at the 1979 return before signing it. Post 1979
On October 25, 1980, petitioner learned of Mr. Hill's infidelity. They were legally divorced on November 9, 1981. On June 4, 1982, they entered into a community property settlement agreement pursuant to which Mr. Hill agreed (1) to give petitioner the marital residence subject to the existing mortgage; (2) pay petitioner $ 100,000; and (3) assume all liability for all back taxes, interest and additions for 1978 and 1979. Mr. Hill received three parcels of land and the businesses. Petitioner spent the $ 100,000 on two failed businesses, living expenses, and further education. On May 17, 1985, petitioner received a master's degree in business administration. OPINION When a joint Federal income tax return is filed, the tax is computed on the aggregate income and the liability with respect to the tax is joint and several. Sec. 6013(d)(3). An exception to joint and several liability, known as the "innocent spouse" rule, is contained in section *392 6013(e). Petitioner may be relieved of joint and several liability for 1978 and 1979 if she establishes that (1) a joint return has been made for each taxable year; (2) on each such return there is a "substantial understatement of tax;" (3) the understatement exceeds a certain percentage of the preadjustment year income of the spouse claiming relief; (4) the substantial understatement of tax is attributable to "grossly erroneous items" of Mr. Hill; (5) in signing each return she did not know, and had no reason to know, that there was such substantial understatement; and (6) taking into account all the facts and circumstances, it is inequitable to hold her liable for the deficiency in tax attributable to such substantial understatement. Section 6013(e); Estate of Simmons v. Commissioner, 94 T.C. (1990); Flynn v. Commissioner, 93 T.C. 355, 359 (1989). Petitioner bears the burden of proof with respect to each of the requirements. Purcell v. Commissioner, 86 T.C. 228 (1986), affd. 826 F.2d 470 (6th Cir. 1987), cert. denied 485 U.S. 987 (1988); Sonnenborn v. Commissioner, 57 T.C. 373 (1971); Rule 142(a). Failure to prove any one of the requirements will prevent petitioner from qualifying *393 for innocent spouse relief. Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. a Memorandum Opinion of this Court. [2] There is no question that petitioner filed joint returns for the years in question, and the parties have stipulated facts sufficient to clearly satisfy the percentage of preadjustment year income requirement. Respondent contends that petitioner fails to meet all of the other requirements. We agree with respondent that she fails to satisfy the last two requirements. The standard applied in determining whether a spouse knew, or should have known, of a substantial understatement of tax is whether a reasonable person under the taxpayer's circumstances at the time of signing the return could be expected to know that the tax liability stated was erroneous, or that further investigation was warranted. Stevens v. Commissioner, 872 F.2d at 1505; Purcell v. Commissioner, 86 T.C. at 238; Terzian v. Commissioner, 72 T.C. 1164 (1979); Smith v. Commissioner, 70 T.C. 651 (1978); McCoy v. Commissioner, 57 T.C. 732 (1972). A spouse cannot close his or her eyes to unusual or lavish expenditures, or to other facts, that might give reason to know *394 of unreported income. Terzian v. Commissioner, 72 T.C. at 1170; Mysse v. Commissioner, 57 T.C. 680, 699 (1972). We believe petitioner was aware of the circumstances creating the substantial understatements shown on the returns in question. She was intimately acquainted with the bookkeeping practices of the businesses. Although she was not involved in the day-to-day operations, she knew of the potential for personal expenses to be charged against business income. We find it significant that she knew household expenses were being paid through the business accounts and that all checks were not properly coded. Simply comparing the monthly withdrawal amounts on the monthly financial statements with the known household expenses would have apprised petitioner that personal expenses were being charged against business income. We therefore conclude that her failure to discover irregularities in the income tax returns was due entirely to her own inattention or volition. This Court previously observed that section 6103 is designed to protect the innocent, not the intentionally ignorant. Dickey v. Commissioner, T.C. Memo 1985-478. The "reason to know" standard imposes a "duty of inquiry" *395 on the spouse claiming relief. Stevens v. Commissioner, 872 F.2d at 1505. Nothing in this record suggests that petitioner made any attempt to ascertain the correct amount of income, or that she was ever denied access to the books and records of the businesses. While there is testimony in the record that petitioner was instructed to sign the 1979 return and not ask questions, she did not sign the return under duress. Cf. Stanley v. Commissioner, 81 T.C. 634 (1983); Brown v. Commissioner, 51 T.C. 116 (1968). Hence, we think that in petitioner's circumstances a reasonable person should have known of the substantial understatements at the time the returns were signed. In addition, we conclude that petitioner has not met her burden of proving that it would be inequitable to hold her liable for the deficiencies and additions to tax. Prior to the amendment by section 424(a) of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494, 801, section 6013(d) provided that a factor to be considered in determining the equity of holding a spouse liable for a deficiency in tax is whether that person significantly benefited, directly or indirectly, from the items of omitted gross income. *396 Although no longer expressly required by statute, this factor is relevant in determining whether it would be inequitable to deny relief. Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989); Purcell v. Commissioner, 86 T.C. at 241. Normal support is not considered a significant benefit. Sec. 1.6013-5(b), Income Tax Regs.; Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Terzian v. Commissioner, 72 T.C. at 1172. Petitioner argues that she did not receive any significant benefits and did not lead an extravagant lifestyle. She did not, however, present evidence of her lifestyle for the period before the years in issue or evidence of the amount expended annually for normal support. To the contrary, there is ample evidence in the record to support the conclusion that petitioner lived a lifestyle far in excess of the reported joint income. We note that petitioner agrees to respondent's adjustments of 1978 and 1979 business income. The 1978 adjustment ($ 93,224) is more than two times the business income ($ 43,910) reported on the 1978 return, and the agreed increase in 1979 business income ($ 161,224) is more than three times the reported amount ($ 48,426). Moreover, as reflected *397 in the findings of fact, the following nonexclusive list of items was paid for and deducted by the businesses: (1) majority of household expenses; (2) home appliances, furnishings, landscaping, and remodeling; (3) at least one item of expensive jewelry; and (4) automobiles for petitioners' children. Additionally, petitioner received, incident to her divorce, the home which had been remodeled and decorated by improperly deducted business funds, and $ 100,000 for her community property share of the milk business. The inescapable conclusion is that petitioner significantly benefited from not reporting and paying the correct amount of tax. We recognize that petitioner has had to endure a great deal of stress, in coping with the dissolution of her marriage, the illness and impending death of her mother, the mental anguish of comforting her sister, and the pressures of school. Although we feel compassion for petitioner, we also think she was able to function well enough during this time to be aware of her own financial situation. Accordingly, based on the record as a whole, it is our view that it would not be inequitable to hold petitioner liable for deficiencies and additions to tax. *398 To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. T.C. Memo. 1988-63↩.