ELIZABETH EWELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DOUGLAS W. EWELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ewell v. Commissioner
Docket Nos. 8853-85; 10137-85.
United States Tax Court
T.C. Memo 1988-265; 1988 Tax Ct. Memo LEXIS 291; 55 T.C.M. (CCH) 1107; T.C.M. (RIA) 88265; June 21, 1988. *291 H and W, husband and wife, received wages and other income in 1976 through 1980, and filed Federal income tax returns for such years. In preparing each year's return, H summarized the information relating to W's income on a worksheet. He did not include the wages and other income earned by him individually and the income earned jointly by the couple on such worksheet. He presented such worksheet to W for her review, along with a blank Form 1040 for her to sign. After W signed such Form and returned it to H, H completed the Form by adding certain personal information. He then signed and filed such Form as a joint return. H and W failed to report the wages and other income received by H during the years in issue. In separate notices of deficiency, the Commissioner determined that H and W are liable for deficiencies and additions to tax with respect to the omitted income. H has conceded that he is liable for such deficiencies and additions. Held, W does no qualify as an income spouse under sec. 6013(e), I.R.C. 1954, because, under the facts and circumstances, it is not inequitable to hold her liable for the deficiencies in tax determined by the Commissioner; *292 held, further, W lacked the intent to evade tax owed on the omitted income; therefore, she is not liable for the addition to tax for fraud under sec. 6653(b), I.R.C. 1954. George E. Krouse, for the petitioners. Lawrence M. Hill, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in, and additions to, the petitioners' Federal income tax as follows: Addition to Tax
Sec. 6653(b)
Petitioner
Year
Deficiency
I.R.C. 1954 [1]
Elizabeth Ewell
1976
$ 13,672.00
$ 6,836.00
1977
12,000.00
6,000.00
1978
13,246.00
6,623.00
1979
14,113.00
7,057.00
1980
9,470.00
4,735.00
Douglas W. Ewell
1976
13,672.00
6,836.00
1977
12,000.00
6,000.00
1978
13,246.00
6,623.00
1979
14,113.00
7,057.00
1980
9,470.00
4,735.00
After concessions, the issues for our decision are: (1) Whether petitioner Elizabeth Ewell is liable for deficiencies in Federal income taxes, resulting *294 from unreported income from wages, dividends, and other sources, received by her husband in 1976 through 1980, in the amounts determined by the Commissioner; (2) whether Mrs. Ewell qualifies as a so-called "innocent spouse" under section 6013(e); and (3) whether Mrs. Ewell is liable for the addition to tax for fraud under section 6653(b) for 1976 through 1980. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Douglas W. and Elizabeth Ewell, husband and wife, resided in Rockville, Maryland, at the time they filed their petitions in this case. They filed their joint Federal income tax returns for 1976 through 1980 with the Internal Revenue Service Center, in Philadelphia, Pennsylvania. Mr. Ewell attended Benjamin Franklin University in Washington, D.C., from 1963 through 1967. He took courses in accounting and finance, but he never received a degree from such university. Mrs. Ewell attended the University of Maryland in college Park, Maryland. She graduated with a bachelor of arts degree in English during the early 1970s. The Ewells were married in May 1972, and they remained husband and wife at the time of trial. *295 Upon graduation from college, Mrs. Ewell accepted a job at Suburban Trust Company (Suburban Trust) in Hyattsville, Maryland. Over the years, she held various positions at Suburban Trust. During 1976 through 1980, she was employed as a customer service representative at such company. As a customer service representative, Mrs. Ewell advised customers of the various types of accounts offered by Suburban Trust and assisted customers in opening checking and savings accounts and in purchasing certificates of deposit. In 1970, Mr. Ewell accepted a position as a senior accountant for 101 Enterprises, which owned the franchise rights to operate Ponderosa Steak House restaurants in Maryland, the District of Columbia, and northern Virginia. For convenience, we shall refer to 101 Enterprises as Ponderosa. In June 1973, Mr. Ewell was promoted to comptroller of Ponderosa. He served in such position until April 1978, when he was promoted to vice president of purchasing at Ponderosa. From 1976 through 1980, Mr. Ewell received a yearly salary from Pondersoa, payable in payroll checks issued to him every 2 weeks. Mr. Ewell deposited many of such checks into a joint bank account maintained *296 by the petitioners at Suburban Trust. Mr. Ewell earned a salary from Ponderosa of $ 39,606.03 in 1976, $ 34,326.95 in 1977, $ 36,299.91 in 1978, $ 39,715.34 in 1979, and $ 33,461.59 in 1980. At the end of each year, Ponderosa furnished him with a Wage and Tax Statement (Form W-2) which reported such wages. During 1977 through 1980, Mr. Ewell was a beneficiary of a trust established under the will of his maternal grandfather, Charles C. Scherer (the Scherer trust). Mr. Ewell received dividends and other income from such trust of $ 1,310.23 in 1977, $ 1,397.91 in 1978, $ 1,621.01 in 1979, and $ 1,866.17 in 1980. A Form K-1 reporting such income from the Scherer trust from 1977 through 1980 was mailed to Mr. Ewell during each of the years in issue. From 1972 to 1978, Mrs. Ewell took a number of business courses that were related to the banking industry, including Introduction to Accounting, Principles of Bank Operations, and Negotiable Instruments. However, she never took any courses relating to income tax preparation, and she never prepared an income tax return. Before her marriage, her father prepared most of her income tax returns. During Mr. and Mrs. Ewell's courtship, *297 Mr. Ewell prepared her 1971 income tax return. After they were married, Mr. Ewell prepared all of their income tax returns. Before preparing the couple's income tax returns, Mr. Ewell accumulated all the information relating to Mrs. Ewell's income, including her Forms W-2 and 1099. He summarized such information on a worksheet and presented the worksheet to Mrs. Ewell for her review. A blank Form 1040 was attached to the worksheet with a paper clip. After reviewing the worksheet to insure that it reflected all her income, Mrs. Ewell signed the blank return. On the Federal income tax returns for 1977 and 1978, Mrs. Ewell signed in the block designated for the spouse's signature. On the 1976 and 1980 returns, she signed in the block designed for the taxpayer's signature. The Ewells' Federal income tax return for 1979 is not contained in the record. After Mrs. Ewell reviewed the worksheet and signed the blank return, they were given back to Mr. Ewell. He transferred the information on the worksheet onto the blank return. He then completed the return by inserting the filing status as married, filing jointly, claiming two exemptions, filling in his occupation and social security *298 number, and signing his name. Mrs. Ewell earned wages from Suburban Trust of $ 8,173.79 in 1976, $ 8,538.48 in 1977, $ 9,026.90 in 1978, $ 9,865.35 in 1979, and $ 10,938.41 in 1980. She also received a lump-sum distribution of $ 861.16 from Suburban Trust's profit-sharing plan in 1977. All of Mrs. Ewell's income from Suburban Trust was reported on the returns filed by the Ewells. In addition, all of the interest earned on the Ewells' joint bank account at Suburban was reported on such returns. Finally, the returns reported interest income earned by Mr. Ewell from an individual account maintained by him at Perpetual Bank (Perpetual). However, the Ewells failed to report the wages earned by Mr. Ewell from Ponderosa in 1976 through 1980 or the dividend and other income received by him from the Scherer trust in 1977 through 1980. Mrs. Ewell was aware that Mr. Ewell worked for Ponderosa. She was also aware that he received payroll checks from Ponderosa every 2 weeks. After she noticed that his wages from Ponderosa were not included on the worksheets, she asked him whether such wages were subject to Federal income tax. He replied that he was an independent contractor for Ponderosa *299 and that his wages were taxed in a "different way" than hers. Mrs. Ewell never asked her husband if he filed a separate Federal income tax return for the years in issue. [2]
Mrs. Ewell's father was a somewhat strict man who demanded obedience from her. At trial, he described his daughter as "not worldly." After her marriage, Mr. Ewell dominated the couple's financial and household affairs. He never physically or mentally intimidated or abused his wife. However, Mrs. Ewell testified that he was "firm" with her, and she clearly deferred to his wishes. The Ewells did not enjoy a lavish or extravagant lifestyle. During the first years of their marriage, they lived in an apartment in College Park, Maryland. In February 1980, they moved to a condominium in Rockville, Maryland. The purchase price of such condominium was $ 150,000. By the time *300 of closing, the Ewells paid $ 45,000 in cash toward the price of the condominium and took out a mortgage of $ 105,000 for the balance. They obtained the downpayment for the condominium by cashing in some certificates of deposit purchased by them. In 1976, the Ewells purchased a 1976 Lincoln Continental for approximately $ 10,000. In 1977, they purchased a 1977 Mercury Cougar RX-7 for approximately $ 8,000. Title to such car was held in Mrs. Ewell's name. In 1980, the Ewells purchased Mr. Ewell's company car from Ponderosa for approximately $ 4,500. In addition, the Ewells purchased a 24-foot boat for approximately $ 6,000 in 1979. Mr. Ewell's failure to report his wages from Ponderosa eventually came to the attention of the Internal Revenue Service. After an investigation by the IRS's criminal investigation division, he was indicted by a Federal grand jury on four counts of income tax evasion for the years 1977 through 1980. On October 12, 1984, he pled guilty to one count of the indictment relating to 1978. He served 180 days in jail and received a fine of $ 5,000. The Commissioner issued separate identical notices of deficiency to Mr. and Mrs. Ewell, in which he *301 determined that they failed to report compensation received by Mr. Ewell from Ponderosa in 1976 through 1980 on their Federal income tax returns for such years. He also determined that they failed to report dividends and income from the Scherer trust received in such years. Finally, he determined that they were liable for the addition to tax for fraud under section 6653(b) for 1976 through 1980. OPINION The petitioners concede on brief that Mr. Ewell failed to report the income that he received from Ponderosa and from the Scherer trust during the years in issue. Therefore, they concede that he is liable for the deficiencies and for additions to tax determined by the Commissioner. However, the petitioners continue to challenge the deficiencies and additions to tax determined with respect to Mrs. Ewell. Thus, the first issue remaining for our decision is whether she is liable for such deficiencies. As a general rule, a husband and wife are jointly and severally liable for any tax or deficiency owed on a joint return. Sec. 6013(d)(3); Davenport v. Commissioner,48 T.C. 921, 926 (1967). *302 Therefore, the entire tax liability on a joint return may be assessed against either spouse. Davenport v. Commissioner, supra.However, one spouse may avoid liability for the tax owed by showing that a joint return was not made ( Calhoun v. Commissioner,23 T.C. 4 (1954)), [3] or that her signature was obtained through duress or deception ( Brown v. Commissioner,51 T.C. 116 (1968)), or by qualifying for relief under the innocent spouse provisions (section 6013(e)). The petitioners first claim that the Federal income tax returns filed by them for the years in issue were not joint returns. However, in the stipulation of facts submitted to the Court at trial, the petitioners admitted that the documents filed by them for such years with the Internal Revenue Service were "their joint U.S. Individual Income Tax Returns." They further stipulated that they both reviewed and signed such returns before they were filed. *303 In general, a stipulation entered into by the parties is treated as a conclusive admission by such parties as to the facts involved in such stipulation. Rule 91(e), Tax Court Rules of Practice and Procedure.[4] Accordingly, statements of fact contained in a stipulation are controlling, and we hold that the petitioners are bound by their admission that the returns filed by them were joint returns. The petitioners next claim that Mr. Ewell misrepresented the nature of the returns presented to Mrs. Ewell for her signature and that she was deceived into signing such returns. They both testified at trial that Mrs. Ewell signed blank Forms 1040 which were represented to be her separate returns, and that such returns were converted to the couple's joint returns at a later time by Mr. Ewell. For such reason, they argue that Mrs. Ewell lacked the intent to file joint returns for the years in issue. Whether or not a joint return has been filed is a question of intent. Whitmore v. Commissioner,25 T.C. 293, 298 (1955). *304 The presence or absence of a spouse's signature on a return, by itself, does not conclusively establish an intent to file or not to file a joint return. Cf. Federbush v. Commissioner,34 T.C. 740 (1960), affd. 325 F.2d 1 (2d Cir. 1963). The petitioners bear the burden of proving that Mrs. Ewell was deceived into signing the returns and that she intended to file only separate returns for the years in issue. Rule 142(a). The petitioners both testified that Mr. Ewell represented such returns to be Mrs. Ewell's separate returns. However, a review of the objective documentary evidence in the record supports a conclusion that the petitioners fully intended to file their returns as joint returns. Mrs. Ewell signed at least two of the returns in issue in the block designated for the spouse's signature. Thus, she left the space designated for the taxpayer's signature blank on such returns, thereby allowing Mr. Ewell to file the returns as joint returns by filling in his signature. In our judgment, such conduct is inconsistent with her testimony that she intended to file only separate returns. In addition, Mr. Ewell admitted at trial that all of the Ewells' *305 interest income from their joint bank account was reported on the returns filed for the years in issue. We also have found as a fact that the interest income earned on Mr. Ewell's individual account at Perpetual was reported in such returns. The fact that the returns report income earned not only by Mrs. Ewell alone, but also by Mr. Ewell or by the couple jointly, is inconsistent with the petitioners' claim that such returns were Mrs. Ewell's separate returns. Federbush v. Commissioner, supra;Cecere v. Commissioner,T.C. Memo. 1975-371, affd. without published opinion 547 F.2d 1159 (3d Cir. 1976). For such reasons, we discount the petitioners' testimony and hold that the Federal income tax returns filed by them for 1976 through 1980 were intended to be the couple's joint returns for such years. Finally, the petitioners argue in the alternative that Mrs. Ewell is not liable for the deficiencies because she qualifies as an innocent spouse under section 6013(e). Section 6013(e), as amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, provides that *306 in order to obtain innocent spouse relief, the taxpayer must show (1) that a joint return has been made for a taxable year; (2) on such return, there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) that she did not know and had no reason to know of such substantial understatement when she signed the return; and (4) after considering all the facts and circumstances, it would be inequitable to hold her liable for the deficiency in income tax attributable to such substantial understatement. See sec. 6013(e)(1); Purcell v. Commissioner,86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Grossly erroneous items are defined to include "any item of gross income attributable to [the spouse not claiming innocent spouse status] which is omitted from gross income." Sec. 6013(e)(2)(A). Substantial understatement, for purposes of the innocent spouse provisions, "means any understatement * * * which exceeds $ 500." Sec. 6013(e)(3). It is undisputed that Mr. Ewell failed to report his wages from Ponderosa and his income from the Scherer trust on the returns filed for the years in issue. It is *307 also undisputed that such omission is a grossly erroneous item attributable to Mr. Ewell and produced a substantial understatement in tax. However, the Commissioner argues that the petitioners failed to establish that Mrs. Ewell did not know or did not have reason to know of the omitted income when she signed the returns. In determining whether Mrs. Ewell knew or had reason to know of the omitted income, we must consider whether a reasonable person in her circumstances could be expected to know of the omissions at the time of the signing of the returns. Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). We have found as a fact that the Ewells intended to file joint returns for the years in issue. We have also found that the worksheets which Mrs. Ewell reviewed contained only summaries of her individual income, and not summaries of income earned by Mr. Ewell alone or by the couple jointly. Mrs. Ewell may have assumed that her husband would include his own income on the returns before filing them. Once Mrs. Ewell signed the returns and gave them back to Mr. Ewell, she had no way of knowing that he did not report all of his income on such returns. For such reason, *308 we are unwilling to conclude that Mrs. Ewell had reason to know of the omissions from income during the years in issue. The Commissioner finally argues that it would not be inequitable to hold Mrs. Ewell liable for the deficiencies in tax resulting from the omissions from income. Mrs. Ewell again has the budget of proving that such a holding would be inequitable. Rule 142(a). Whether it is inequitable to hold Mrs. Ewell liable for the deficiency in tax is to be determined by an examination of all the facts and circumstances in the case. Sec. 1.6013-4(b), Income Tax Regs. The record shows that, during each of the years in issue, she signed a blank Form 1040 which she intended to serve as the Ewells' joint return for such year. The record also shows that Mrs. Ewell failed to review the return after it was completed and before it was mailed to the IRS. For an individual to sign a blank return and fail to review such return before it is filed raises a risk that the return will be altered or that, as in this case, not all the income earned in the tax year will be reported. We believe that it was unreasonable for Mrs. Ewell to allow the returns signed *309 by her to be filed without further review. Moreover, the Ewells purchased automobiles, a boat, and a condominium, all of which could not have been purchased with Mrs. Ewell's income alone. Thus, she shared in the benefits derived by the Ewells from the unreported income. [5]Adams v. Commissioner,60 T.C. 300, 303-304 (1973); see also Blinderman v. Commissioner,T.C. Memo. 1986-536. Under such circumstances, it is not inequitable to hold her liable for the resulting deficiencies in tax. For such reasons, we hold that Mrs. Ewell is not an innocent spouse within the meaning of section 6013(e). The final issue for our decision is whether Mrs. Ewell is liable for the additions to tax for fraud, as determined by the Commissioner. *310 We have held Mrs. Ewell liable for the deficiencies in tax resulting from the omitted income, because she filed joint returns along with Mr. Ewell for 1976 through 1980 and because she does not qualify as an innocent spouse. However, the fact that Mrs. Ewell filed joint returns for such years does not in itself create liability for the fraud addition. Sec. 6653(b); Stone v. Commissioner,56 T.C. 213, 227 (1971). Section 6653(b)(3) provides that the fraud addition only applies with respect to a spouse who signed a joint return if some part of the underpayment in tax is due to that spouse's fraudulent conduct. The Commissioner has the burden of proving such fraudulent conduct by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To establish fraud, the Commissioner must show that Mrs. Ewell intended to evade taxes which she knew or believed to be owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). *311 The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Since direct evidence of fraud is rarely available, circumstantial evidence may be considered. Spies v. United States,317 U.S. 492, 499 (1943); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud may properly be inferred where an entire course of conduct establishes the requisite intent. Rowlee v. Commissioner, supra.Our conclusion must be reached not on isolated pieces of testimony, but on the entire record. Kellett v. Commissioner,5 T.C. 608, 616 (1945). We have concluded that Mrs. Ewell does not qualify as an innocent spouse because, in our judgment, it would not be inequitable to hold her liable for the deficiencies in income tax determined by the Commissioner. However, a finding of fraud requires a showing *312 by the Commissioner that Mrs. Ewell acted with an intent to evade taxes. Liability for the addition to tax for fraud requires that the Commissioner prove that she knew of the income omitted from the returns by Mr. Ewell. See Sheckles v. Commissioner,T.C. Memo. 1984-289. The petitioners have conceded that Mr. Ewell was involved in a scheme intended to evade the payment of income tax owed for the years in issue. In our judgment, the Commissioner has not established that Mrs. Ewell was a participant in such scheme. It is true that Mrs. Ewell knew that her husband received wages from Ponderosa during the years in issue and that he often deposited his payroll checks from Ponderosa into their joint bank account at Suburban Trust. She also knew that such wages were not reflected on the worksheets presented to her for her review. She failed to review the returns she signed before they were filed, and failed to insure that Mr. Ewell included his wages from Ponderosa on such returns or that he filed his own separate returns so as to properly report his income. Through her inaction, she facilitated Mr. Ewell's scheme to evade the payment of income taxes. However, *313 these facts are insufficient to support a finding of fraud on the part of Mrs. Ewell. The record shows that she deferred to her husband on household and financial matters. Among other things, she relied on him to prepare and file the couple's tax returns. He took advantage of her trust by altering the returns she signed. While Mrs. Ewell perhaps did not act prudently and consequently failed to learn of his conduct in altering such returns, we do not think that she acted with the intent of defraud. For such reason, we conclude that she is not liable for the addition to tax for fraud under section 6653(b). In docket No. 8853-85, decision will be entered for the respondent with respect to the deficiencies and for the petitioner with respect to the addition to tax. In docket No. 10137-85, decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue. ↩
2. Mr. Ewell testified that Mrs. Ewell did in fact ask him whether he filed separate returns reflecting his wages from Ponderosa. He also testified that he told her that he did and that he kept such returns in his office. However, we do not find Mr. Ewell to be a credible witness and decline to accept his testimony on this point. ↩
3. See also Wiener v. Commissioner,T.C. Memo 1971-56; Wills Corp. v. Commissioner,T.C. Memo. 1969-36↩. 4. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure. ↩
5. Although sec. 6013(e) as amended in 1984 no longer requires an assessment of whether a spouse benefitted from an erroneous item, Congress intended that benefits received should continue to be taken into account. H. Rept. 98-432 (Part 2), on H.R. 4170 (Tax Reform Act of 1984), at 1502 (1984). See also Purcell v. Commissioner,86 T.C. 228, 241 (1986), affd. 826 F.2d 470↩ (6th Cir. 1987).