MORRIS L. AND RENEE J. CHUCAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chucas v. Commissioner
Docket No. 27916-90
United States Tax Court
T.C. Memo 1993-147; 1993 Tax Ct. Memo LEXIS 142; 65 T.C.M. (CCH) 2324; April 6, 1993, Filed *142 Decision will be entered under Rule 155 with respect to petitioner Morris Chucas for all years in issue and with respect to petitioner Renee Chucas for 1979. Decision will be entered for petitioner Renee Chucas for 1977, 1978, and 1980. For petitioners: Robert H. Williams and Ronald M. Warren. For respondent: Michael D. Baker. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in and additions to tax and additional interest as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6621(c)
1977
$ 250,700.60
$ 12,535
[1]
1978
80,711.00
4,036
[1]
1979
676.22
-- --      1980
3,989.70
200
[1]
Respondent also determined additions to tax under section 6653(a)(2) for 1977, 1978, and 1980, which respondent now concedes. After concessions, the sole issue for decision is whether Renee Chucas qualifies as an innocent spouse under section 6013(e) for 1977, *143 1978, and 1980. We hold that she does. The parties agree that Renee Chucas does not qualify as an innocent spouse for 1979 because she does not meet the percentage income test for that year, but that she meets the percentage income test for 1977, 1978, and 1980. Sec. 6013(e)(4)(B). References to petitioner in the singular are to Renee Chucas. All section references are to the Internal Revenue Code in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners were married in 1965, and remained married during the years in issue. They separated in September 1989 and divorced in April 1991. Petitioners have two children, born in 1966 and 1969. Petitioners resided in Cherry Hill, New Jersey, when the petition was filed. Petitioner has a degree in history. She has not studied tax or accounting. She worked for approximately 3 years before her marriage, first as a teacher, and then as an insurance agent for her father's company. She filed individual returns before her marriage in 1965. During the years in issue, *144 she worked as a part-time travel agent and earned approximately $ 1,000 to $ 1,500 per year. Mr. Chucas did not tell petitioner about his investments or his financial affairs. He opened joint savings accounts at Fellowship Bank, Coastal State Bank, and Washington Bank, and purchased certificates of deposit during the years in issue, without her knowledge. Petitioner never signed any account cards for those accounts and was never in those banks. Mr. Chucas signed petitioner's name to financial documents without her knowledge. Petitioners had a joint checking account at the Bank of New Jersey which petitioner knew about and from which she paid the household expenses. Mr. Chucas provided most of the funds for this account. Petitioner took care of their children and household. She did not read her husband's mail. She did open household bills and personal mail addressed to her and her husband. 2. Mr. Chucas' Law Practice
Mr. Chucas practiced antitrust law and performed legal services relating to the formation of banks. He opened accounts with at least three of these banks. Through February 1977, he was a partner in the law firm Pelino, Wasserstrom, Chucas and Monteverde *145 in Philadelphia, Pennsylvania. After March 1977, he was a partner in the law firm Wasserstrom and Chucas. He became of counsel to this firm in January 1981. Petitioner was not involved with her husband's law practice. She visited his office only a few times during their 25 years of marriage. She attended social events with her husband's business associates and their spouses, but did not discuss business or investments. 3. Mr. Chucas' Investments
a. Abusive Tax Shelters
During the years in issue, Mr. Chucas invested in several partnerships which respondent determined to be abusive tax shelters. Petitioners reported income and losses for these partnerships and for a purported Schedule C lithograph venture on their tax returns for the years in issue. Mr. Chucas bought the investments through his law partner and friend, David Wasserstrom (Wasserstrom), who also invested in them, except for the lithograph activity. Wasserstrom is a tax specialist and has an LL.M. degree in taxation from New York University. Mr. Chucas received most correspondence concerning his investments at his law office. Petitioner did not open Mr. Chucas' business mail that arrived at their *146 home. Mr. Chucas opened and maintained joint accounts at the Fellowship Bank, Coastal State Bank, and GMAC without petitioner's knowledge. b. Jodamoto Enterprises
Around 1977, Mr. Chucas and the three other named partners at Pelino, Wasserstrom, Chucas and Monteverde formed the Jodamoto Enterprises partnership (Jodamoto) to make investments unrelated to the law firm. The law partners made their wives equal partners in Jodamoto, with each wife receiving a 25-percent interest. However, the law partners made all decisions relating to Jodamoto and petitioner did not know of its existence or that she was a partner. Wasserstrom instructed the partners to have their wives sign the partnership agreement, and his wife signed it. Wasserstrom gave the agreement to Mr. Chucas for petitioner to sign. However, petitioner never saw that document or any others relating to the partnership. Jodamoto issued Schedules K-1 for 1977 and 1978 which listed petitioner as a partner. Respondent determined that Jodamoto was an abusive tax shelter and disallowed the resulting loss petitioners claimed on their 1977 return. c. Purported Lithograph Activity
In 1978, petitioners reported losses *147 from a purported Schedule C activity based on a lithograph Mr. Chucas purchased. Mr. Chucas listed his home address as the location of the lithograph activity, but he did not conduct any lithograph-related business at his home. Petitioner was not aware of the purported lithograph activity. Mr. Chucas received most of the correspondence concerning the activity at his office. d. The Tannery and Mr. Chucas' Losses
In 1980, Mr. Chucas had $ 300,000 in cash and investments, which petitioner did not know about. He used the money and investments to secure a loan to buy a tannery in Maine. He and his cousin each bought 50 percent of the tannery. Each invested approximately half a million dollars. Mr. Chucas encumbered the $ 300,000 to provide a letter of credit and borrowed the rest. The tannery failed in 1983. Mr. Chucas could not make the payments and lost all his collateral. 4. Petitioners' Income Tax Returns
Petitioners filed joint returns in 1977, 1978, 1979, and 1980. The returns were prepared at the accounting firm of Touche Ross by a C.P.A. named Howard Needleman (Needleman) and other Touche Ross personnel. Mr. and Mrs. Needleman and petitioners were friends. *148 Petitioners signed the returns for the years in issue on the following dates: Year
Date Signed
1977
April 14, 1978
1978
July 16, 1979
1979
October 14, 1980
1980
October 12, 1981
Petitioner glanced at the returns when she signed them, but did not verify their accuracy because she relied on her husband and Needleman. Before signing the returns, petitioner asked her husband if the returns were correct. He said they were. Petitioners were audited for prior tax years and respondent made adjustments for similar investments. The record does not indicate when that audit began. The audit ended in 1985. Mr. Chucas took out a second mortgage to pay the deficiency. For the 1977 tax year, petitioners executed a Form 2848, Power of Attorney, on April 25, 1979, and a Form 872-A, Consent to Extend the Time to Assess Tax, on August 15, 1980. 5. Petitioners' Lifestyle
Petitioners lived in the house they bought in 1967 for $ 39,000 until 1989 when they separated. They did not own a second home. Petitioners owned three Ford station wagons over 15 years, and Mr. Chucas used a car provided by his law firm. Petitioners had some membership privileges at the Woodcrest Country *149 Club, such as use of a pool and tennis courts. As a travel agent, petitioner received discount rates of $ 225 to $ 300 for "familiarization" trips. During the years in issue, she took a 10-day trip to Scandinavia with her husband, the expenses of which were significantly reduced because she received discounts as a travel agent. Otherwise, petitioners took routine vacations during the years at issue, such as to Washington, D.C., and Williamsburg, Virginia. Mr. Chucas occasionally gave petitioner jewelry, but no pieces costing more than $ 1,000. Mr. Chucas' tax shelter deductions did not improve petitioners' standard of living because, unknown to petitioner, Mr. Chucas reinvested and lost all the proceeds from his investment activities in the tannery. OPINION A husband and wife who file a joint return are jointly and severally liable for the tax due on their income and related additions to tax. Secs. 6013(d)(3), 6662(a)(2). However, an innocent spouse may be relieved of joint and several liability in certain circumstances. Sec. 6013(e). The taxpayer has the burden of proving entitlement to relief under section 6013(e). Rule 142(a). To obtain relief under section 6013(e), *150 the taxpayer must prove for each year in issue that: (1) A joint return was filed; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on the return; (3) in signing the returns, the taxpayer did not know, and had no reason to know, of the substantial understatement; and (4) under all the facts and circumstances, it is inequitable to hold the taxpayer liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1). Failure to meet any of these requirements precludes a taxpayer from qualifying as an innocent spouse. Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310; Estate of Jackson v. Commissioner, 72 T.C. 356, 362 (1979). In enacting section 6013(e) Congress "intended the exception to remedy a perceived injustice, and we should not hinder that praiseworthy intent by giving the exception an unduly narrow or restrictive reading." Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975) (fn. ref. omitted). 1. *151 Section 6013(e)(1)(A) -- Joint Return
Petitioner must prove she filed joint returns for the years in issue. Sec. 6013(e)(1)(A). Respondent concedes that petitioner meets this element. 2. Section 6013(e)(1)(B) -- Substantial Understatement of Tax Attributable to the Grossly Erroneous Items of the Other Spouse
Petitioner must prove that the substantial understatements of tax for the years in issue were attributable to grossly erroneous items of her husband. Sec. 6013(e)(1)(B). Respondent concedes that petitioner meets this requirement because petitioners reported substantial underpayments attributable to deductions and credits in connection with Mr. Chucas' various tax shelters which had no basis in fact or law on their joint tax returns for 1977, 1978, and 1980. 3. Section 6013(e)(1)(C) -- Knowledge of the Substantial Understatements
Petitioner must demonstrate that in signing the returns for the years in issue she did not know, and had no reason to know, of the substantial understatements attributable to her husband's abusive tax shelter investments. Sec. 6013(e)(1)(C). The knowledge contemplated by section 6013(e)(1)(C) is knowledge of the underlying transaction, *152 not knowledge of the tax consequences of the transaction. Purcell v. Commissioner, 826 F.2d 470, 473-474 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Quinn v. Commissioner, 524 F.2d 617, 626 (7th Cir. 1975), affg. 62 T.C. 223 (1974); Bokum v. Commissioner, 94 T.C. 126, 145-146 (1990). The transactions at issue are petitioner's investments which respondent determined to be abusive tax shelters. a. Knowledge of the Understatement
Petitioners testified that petitioner did not know about the investments at issue. Respondent argues that it is unlikely that Mr. Chucas did not tell petitioner about his investments, totaling approximately $ 300,000 by 1980. Respondent argues that petitioners' testimony is not sufficient to overcome respondent's presumption of correctness because it was uncorroborated. We disagree. Petitioners' testimony was reasonable, credible, and consistent. Respondent did not produce any witnesses or evidence that leads us to conclude otherwise. As stated by the United States Court of Appeals for the Third Circuit: *153 There is no question that taxpayer's uncontradicted testimony [is] sufficient to establish that the Commissioner's determination * * * was erroneous. However, the Tax Court [is] not bound to accept taxpayer's uncontradicted testimony if it * * * [finds] the testimony to be improbable, unreasonable or questionable. * * * [Citations and fn. refs. omitted.] Demkowicz v. Commissioner, 551 F.2d 929, 931 (3d Cir. 1977), revg. T.C. Memo. 1975-278. We found nothing improbable, unreasonable, or questionable about petitioners' testimony. Respondent argues that the existence of 1977 and 1978 Schedules K-1 bearing petitioners' home address and listing petitioner as owning a 25-percent interest in Jodamoto establishes that petitioner had knowledge of Jodamoto. Petitioners testified that petitioner did not see the Schedules K-1 during the years at issue and did not know of Jodamoto. Wasserstrom testified that he was not aware of petitioner's knowing of Jodamoto. Petitioners and Wasserstrom were credible witnesses. Based on this record, as stated in the findings of fact, we find that petitioner did not know of Jodamoto. Respondent *154 argues that petitioner knew of the lithograph activity because Mr. Chucas used petitioners' home address for that activity. We disagree. Mr. Chucas received most correspondence concerning the lithograph activity at his office. Any mail that did arrive at home concerning the lithograph activity did not give petitioner knowledge because she did not open her husband's mail. Mr. Chucas did not in fact conduct any lithograph activity at home. Therefore, we conclude that the documents bearing petitioners' address did not give petitioner knowledge of the underlying transactions and that petitioner did not know of the lithograph activity. Therefore, we conclude that petitioner did not know of the substantial understatement of tax on petitioners' returns for the years at issue. b. Reason to Know of the Understatement
We next decide whether petitioner had reason to know of the substantial understatement of tax. The test to apply in deciding whether petitioner had reason to know of the substantial understatement is whether, at the time of signing the returns, a reasonable person in the taxpayer's circumstances could be expected to know of the substantial understatement. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), *155 affg. T.C. Memo. 1988-63; Shea v. Commissioner, supra at 566; Sanders v. United States, supra at 166-168. Significant factors in this decision are petitioner's intelligence, her level of involvement in the financial transactions which gave rise to the deductions, her husband's openness concerning these transactions, and the presence of lavish or unusual expenditures compared to taxpayer's past standard of living. Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court. Petitioner has no business or tax education. She worked for approximately 3 years before her marriage in 1965, but was not employed outside her home for more than 10 years before the first year at issue here. She had no knowledge of Mr. Chucas' investments. Petitioner's involvement in the couple's financial affairs was limited to paying household expenses for which her husband provided the funds. Petitioners maintained a standard of living commensurate with Mr. Chucas' income from his law practice. Petitioners did not live a lavish or extraordinary *156 lifestyle. Respondent argues that if petitioner had reviewed the returns more closely, she would have known that the claimed partnership losses created a substantial understatement of tax. Respondent points out that the returns showed income and losses from 17 partnerships in 1977, 16 in 1978, and 12 in 1980. Respondent contends that this should have put petitioner on notice to inquire further into the accuracy of the returns. Respondent also argues that the losses claimed on petitioners' returns were staggering and would put even an unsophisticated taxpayer on notice to question the returns. The losses claimed represented 52 percent, 29 percent, and 38 percent of petitioners' total gross income for 1977, 1978, and 1980, respectively. Deductions which are so large as to be "staggering", coupled with other factors such as a lavish lifestyle, an unexplained failure of the tax preparer to sign the return, or the involvement of the taxpayer claiming innocent spouse status in the activity related to the understatement of tax, give a taxpayer reason to know of the understatement of tax. Stevens v. Commissioner, supra at 1506; Bokum v. Commissioner, 94 T.C. 126, 148-150 (1990). *157 In Stevens v. Commissioner, supra, the Court of Appeals for the Eleventh Circuit affirmed our decision denying the taxpayer innocent spouse relief. In that case the taxpayer knew of her husband's investments from her work in his business and from conversations with her husband and their accountants. In addition, the taxpayer's lifestyle was lavish, and the taxpayers claimed losses equal to or greater than their income for the years at issue. The court in Stevens stated that when: staggering deductions -- deductions which equal or exceed one's income -- are claimed, the appearance of those deductions on a tax return, combined with an affluent lifestyle that has been wholly unaffected by the losses allegedly incurred, makes the presence of unusual and lavish expenditures highly pertinent. * * * Id. at 1506. In Bokum v. Commissioner, supra at 146-148, the taxpayer knew about a sale of property by her husband's corporation, which distributed the proceeds ($ 2,605,272) to her husband, the sole shareholder. The taxpayers reported the distribution as dividend income and subtracted *158 therefrom $ 2,089,057 as the basis deduction. Id. at 147. These amounts far exceeded any other amount shown on the taxpayers' return. The taxpayer signed the tax return, but the preparer did not. Id. at 132. We held that the taxpayer had notice that the returns might be inaccurate because of the taxpayer's knowledge of the transaction which caused the underpayment, the plain description of the transaction on the taxpayers' return, the magnitude of the numbers on the return, and the fact that the preparer had not signed the return. Id. at 147, 150. The facts in the instant case are markedly different than in Stevens v. Commissioner, supra, and Bokum v. Commissioner, supra. Here, petitioner was not involved in Mr. Chucas' investments and did not live a lavish lifestyle, and the preparer signed the return. In addition, the deductions at issue in Stevens and Bokum were larger relative to the other items on the return than in the instant case. Because of these differences, respondent's reliance on Stevens *159 and Bokum is not warranted. Respondent raises two arguments for the first time in the posttrial memorandum. Respondent did not question petitioners about either point at trial. First, respondent argues that petitioner should have known of the understatement of tax on petitioners' 1977, 1978, and 1980 returns because of the audit of petitioners' prior years. Petitioners deny in their posttrial memorandum that petitioner knew about the earlier audit. The record is incomplete concerning the prior audit. The prior audit of petitioners' 1974, 1975, and 1976 tax returns ended in 1985, and Mr. Chucas testified that he took out a second mortgage in 1985 or 1986 to pay the deficiencies. However, the record does not show when the audit started, whether it occurred before, during, or after the years in issue, or what petitioner knew about it when it occurred. Second, respondent argues in the posttrial memorandum that petitioner had notice that there were problems with petitioners' 1977, 1978, and 1980 returns, when they executed Forms 2848, Power of Attorney, on April 25, 1979, and 872-A, Consent to Extend the Time to Assess Tax, on August 15, 1980. We disagree. Petitioner's signing *160 of the Forms 872-A and 2898 did not give her notice of problems with the 1977 return because she signed it before she signed the forms. She signed the Form 2848 before signing the 1978 and 1980 returns and signed the Form 872-A before signing the 1980 returns. Consenting to extend the statute of limitations and authorizing a power of attorney may have alerted petitioner that the Internal Revenue Service had some interest in the taxable year referred to in the forms, but we do not think she knew or should have known from it that there was a substantial understatement in a later year, or that it triggered a duty for her to inquire about the later year. We accept petitioner's denial of knowledge in light of the entire record in this case. We find under the facts of this case that petitioner's signatures on these IRS forms did not give her notice to inquire. We conclude that petitioner did not know or have reason to know of the understatement of tax. Accordingly, petitioner meets the third requirement for innocent spouse relief. 4. Section 6013(e)(1)(D) -- Inequity
To be entitled to relief as an innocent spouse, petitioner must show that, based on the facts and circumstances, *161 it would be inequitable to hold her liable for the deficiency in tax for the years in issue. Sec. 6013(e)(1)(D). We find that it would. In deciding whether it is inequitable to hold a spouse liable for a deficiency, we take into account whether the purported innocent spouse significantly benefited, either directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); H. Rept. 98-432 (Part 2), at 1501, 1502 (1984); sec. 1.6013-5(b), Income Tax Regs. Normal support is not a significant benefit for purposes of deciding whether it is inequitable to hold petitioner liable for the deficiency. Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs. Normal support is to be determined by the circumstances of petitioners. Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975); Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989). *162 Respondent contends that petitioner derived significant benefit from the understatements. Respondent contends that lower tax rates which result in a tax savings are a significant benefit, and thus argues that petitioner benefited for each year in issue. We disagree. Petitioners received no refunds and their standard of living did not change due to any tax savings because Mr. Chucas reinvested the savings and ultimately lost them all. Petitioner did not benefit from the savings. See Bouskos v. Commissioner, T.C. Memo. 1987-574. Respondent further argues that petitioner's vacations were a significant benefit. We disagree. Mr. Chucas' income from his law practice was more than adequate to pay for petitioner's trips, especially in light of the discounts she received as a travel agent. Respondent also argues that petitioner benefited from petitioners' family vacations. However, their family trips consisted of routine trips within the bounds of normal support. Based on the record of this case, we conclude that it would be inequitable to hold petitioner liable for the deficiency in tax. Accordingly, we find petitioner has met all the elements of *163 section 6013(e) and thus is an innocent spouse for 1977, 1978, and 1980. To reflect concessions and the foregoing, Decision will be entered under Rule 155 with respect to petitioner Morris Chucas for all years in issue and with respect to petitioner Renee Chucas for 1979. Decision will be entered for petitioner Renee Chucas for 1977, 1978, and 1980. Footnotes
1. Formerly sec. 6621(d); 120 percent of the interest due on the underpayment.↩