VIRGINIA BOYLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boyle v. Commissioner
Docket No. 1838-92
United States Tax Court
T.C. Memo 1994-438; 1994 Tax Ct. Memo LEXIS 446; 68 T.C.M. (CCH) 633; August 29, 1994, Filed *446 Decision will be entered under Rule 155. For petitioner: Leonard S. Roth
For respondent: Andrew M. Tiktin. FAY
FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined deficiencies in income tax, with additions to tax and increased interest, due from petitioner for the 1980, 1981, and 1982 taxable years as follows: Increased
Interest
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6621(c) 6653(a) 6653(a)(1)
6653(a)(2)
6661
1980
$ 43,242
[1]
$ 2,162.10
--  --
$ 10,810.50
1981
44,800
[1]
--  $ 2,240
[2]
11,200.00
1982
139
--
--  --  --
--  All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions by the parties, [1] the sole issue [2] *448 for decision is whether petitioner is entitled to innocent spouse relief pursuant to section 6013(e) for the 1980 and 1981 taxable years. [3] We find that petitioner is *447 entitled to innocent spouse relief for both years at issue. Some of the facts have been stipulated and are so found. The stipulation of facts, with the exhibits attached thereto, and the stipulation of settled issues are incorporated herein by this reference. Factual Background
At the time the petition herein was filed, petitioner resided in Houston, Texas. Petitioner and her former husband, Frank G. Boyle (Mr. Boyle), married in August 1966 and were married for almost 21 years until their divorce in June 1987. Petitioner and Mr. Boyle separated and lived in separate homes from 1982 until their divorce. Joint tax returns were filed by petitioner and Mr. Boyle for the taxable years 1966 through 1986. Petitioner was employed in the banking business from 1964 through 1979. In January 1979 petitioner retired from banking because she and Mr. Boyle were going to attempt to have or adopt a child. Because of a strained marital relationship at *449 that time, however, petitioner and Mr. Boyle abandoned this plan. Petitioner began working part-time in July 1980 and accepted a full-time position as a lending officer for Capital National Bank (Capital Bank) in September 1980. [4] Petitioner was employed by Capital Bank throughout the period here at issue. Mr. Boyle graduated from Texas A & M University in 1961 with a bachelor's degree in agricultural economics. Mr. Boyle was a successful businessman throughout the period at issue, owning and operating his own home construction company, International Homes, Inc., and managing a diverse portfolio of investments during 1980 and 1981. Other than a brief stint working for International Homes, petitioner had no involvement in Mr. Boyle's business dealings, or his financial affairs. For the first 3 months that petitioner was married to Mr. Boyle, a joint checking account was maintained. Thereafter for the next 21 *450 years, petitioner and Mr. Boyle kept their financial accounts and bank records completely independent of each other. In fact, every aspect of petitioner's and Mr. Boyle's financial lives was strictly segregated during their entire marriage, to wit: neither spouse had signatory authority over the other spouse's individual accounts; the salary income of each spouse was deposited into the account of the spouse who earned the income, with absolutely no intermingling of funds; each spouse was responsible for his or her own financial obligations; and household expenses were strictly divided up; for example, petitioner purchased groceries and paid utilities, whereas Mr. Boyle paid the mortgage, property taxes, and hazard insurance. During the course of their marriage, there existed only two joint investments involving petitioner and Mr. Boyle. [5]
*451 Petitioner was, and is, a very conservative investor, placing her own money solely in savings accounts, certificates of deposit, and low risk stock. The joint Federal income tax return filed by the Boyles for the 1980 taxable year reflected a deduction [6] for $ 77,164 relating to an investment in Conveyor Products, Ltd. (Conveyor). Despite the Conveyor deduction, after adjustment for other various items and deductions, the Boyles' 1980 return reflected adjusted gross income of $ 103,628 on line 31. The joint return filed by the Boyles for the 1981 taxable year reflected a deduction [7] for $ 79,628 relating to an investment in JRK, Ltd. (JRK). Despite the JRK [8] deduction, after adjustments for other income items and deductions, the Boyles' 1981 return reflected adjusted gross income *452 of $ 81,015 on line 31. The 1980 and 1981 returns are lengthy documents, and are unusually complex individual returns that report many income and loss items involving partnerships, rental properties, and other investments. The funds for the initial investment in both Conveyor and JRK came from Mr. Boyle's personal bank account after Mr. Boyle was introduced to these investments by Mr. Kaps. Mr. Boyle solely executed all documents with respect to both Conveyor and JRK. Despite the conflicting testimony [9] concerning whether or not petitioner had knowledge of the Conveyor and JRK [10] investments, we find, in light of the record taken as a whole that petitioner did not know that these investments *453 existed prior to 1984, the year in which petitioner executed the consent form to extend the statute of limitations. *454 From 1966 through 1980, Mr. Boyle and petitioner utilized a particular procedure each year for the preparation and filing of their joint Federal income tax returns. [11] Other than collecting and providing her tax information and making a perfunctory review of the return after its preparation, petitioner played no role in the preparation of the couple's returns, the returns being prepared instead by Mr. Kaps, the accountant. The above-mentioned return preparation procedure was followed with respect to the Boyles' 1980 return. Petitioner made a cursory review of the 1980 return prior to affixing her signature to it in April 1981. Petitioner noticed that the return was "a very thick, very complex, very complicated one"; however, she also noticed that Mr. Boyle and the accountant, Mr. Kaps, had already signed the return. With respect to the 1981 return, Mr. Boyle, some time in early 1982, delivered the pertinent tax information to his *455 C.P.A., Mr. Kaps. After Mr. Kaps had prepared the Boyles' 1981 return, he caused it to be delivered, ready for filing, to Mr. Boyle. In April 1982, however, petitioner's absence from town caused the latter part of the process to break down. In early April 1982, before the 1981 return had been completed and delivered by Mr. Kaps to Mr. Boyle, petitioner was forced to leave town and travel to Wichita Falls, Texas, to attend to a sick parent. Petitioner was still absent on April 14 and, therefore, unable to personally read over and execute the 1981 return. Mr. Boyle affixed his signature to the 1981 return on April 14, 1982. During the evening of April 14, 1982, Mr. Boyle called petitioner at her parents' home in Wichita Falls and informed her that he was in possession of their completed 1981 return, and that, because a request for an extension had not been filed, the 1981 return needed to be executed by her and mailed. Petitioner made it clear to Mr. Boyle that she wanted to review the return, as she had done with respect to each of their returns for the prior 15 years, and that it was not possible for her to fly home in order to review and execute the return. Mr. Boyle, however, *456 refused to file an extension on petitioner's behalf, and reasserted that the 1981 return needed to be executed and submitted. Finally, after (1) being pressured by Mr. Boyle, (2) recalling that nothing significant had happened during the year, (3) being told by Mr. Boyle that Mr. Boyle and Mr. Kaps had already executed the return, (4) being distressed over her father's illness, and (5) believing that Mr. Boyle would have signed petitioner's name even without her consent, petitioner reluctantly authorized Mr. Boyle to execute and submit the 1981 return on her behalf. Mr. Boyle did not discuss the JRK deduction with petitioner during their phone conversation nor did he disclose the amount of the expected 1981 refund. On April 15, 1982, after the 1981 return was signed [12] on behalf of petitioner, it was then mailed to the proper I.R.S. Service Center. The *457 joint returns filed by the Boyles in 1980 and 1981 claimed refunds in the amounts of $ 16,111 and $ 61,227, respectively. These refund checks were negotiated and cashed by Mr. Boyle. Petitioner did not authorize anyone to endorse her name to the 1980 or 1981 refund checks. Petitioner did not receive any amount of these refunds, nor did she receive or endorse the checks pertaining to these refunds. Mr. Boyle crossed out the Boyles' home address on the 1981 return and substituted his business address so that he would be the sole recipient of the 1981 refund check. Although petitioner and Mr. Boyle separated in 1982, they continued to file joint returns for all taxable years from 1982 through 1986 until they were divorced in 1987. The refund checks relating to these returns, however, were sent to Mr. Boyle's business address, and Mr. Boyle did not share the refunded amounts with petitioner. Instead, these amounts totaling $ 115,620, excluding any amounts received for the 1985 return, [13] were deposited directly into Mr. Boyle's separate account, over which petitioner did not have any signatory authority. *458 Petitioner initiated divorce proceedings in 1986, which were later withdrawn, and then reinitiated in 1987, in which year the divorce was finalized. The record reflects that, although Mr. Boyle prepared a list of assets to be divided between himself and petitioner as a result of the marriage, Mr. Boyle failed to list all the marital assets, and, in so doing, acted in a misleading manner. During the period between the time when petitioner initiated the first divorce proceeding in 1986 and the second proceeding in 1987, Mr. Boyle knowingly depleted certain assets thereby reducing the property settlement to which petitioner would otherwise have been entitled. Discussion
As a preliminary matter, we note that the outcome of this case turned mainly on the credibility and demeanor of the witnesses at trial. As mentioned above, the Court did not find Mr. Boyle nor respondent's two other witnesses, both close friends of Mr. Boyle, to be entirely believable, whereas petitioner and her witnesses testified in a reasonable, credible, and consistent manner. Petitioner argues that she is entitled to innocent spouse relief pursuant to section 6013(e). Respondent argues that petitioner *459 is not entitled to innocent spouse relief for the years in issue. We agree with petitioner. Section 6013(e), provides: (1) In General. Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
All of the statutory requirements must be met for the taxpayer to be afforded relief. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986). *460 The burden of proof is on petitioner to prove that she satisfies each of the requirements of section 6013(e)(1). Rule 142(a); Bokum v. Commissioner, 94 T.C. 126 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). The first requirement petitioner must meet is that she filed joint returns for the years in issue. As mentioned above, petitioner filed joint returns with Mr. Boyle; consequently, petitioner meets this requirement. The second requirement is that there be a substantial understatement of tax attributable to grossly erroneous items of Mr. Boyle. The parties agree that this requirement has been met. [14]
The two remaining requirements, then, are (1) whether petitioner knew or had reason to know of the substantial understatements, and (2) whether it would be inequitable to hold petitioner liable for the deficiency *461 attributable to the substantial understatements. The Court concludes that, with respect to the 1980 and 1981 taxable years, petitioner did not know or have reason to know that there was a substantial understatement of tax, nor did petitioner benefit (beyond normal support) from the substantial understatements, and it would be inequitable to hold petitioner liable for the deficiencies in tax attributable to such substantial understatements. Consequently, petitioner qualifies for innocent spouse relief for the 1980 and 1981 taxable years. A. Knowledge of the Substantial Understatements
Petitioner must demonstrate that, in signing the returns for the years in issue, she did not know, and had no reason to know, of the substantial understatements attributable to her husband's investments. Sec. 6013(e)(1)(C). The knowledge contemplated by section 6013(e)(1)(C) is knowledge of the underlying transaction, not knowledge of the tax consequences of the transaction. Purcell v. Commissioner, supra at 473-474; Quinn v. Commissioner, 524 F.2d 617, 626 (7th Cir. 1975), affg. 62 T.C. 223 (1974); *462 Bokum v. Commissioner, supra at 145-146. The transactions at issue are the Conveyor and JRK investments. 1. Knowledge of the Understatement
Petitioner testified that she did not know about the investments at issue. Respondent argues that the petitioner knew about the investments at issue and that petitioner's testimony is not believable. We disagree. Petitioner's testimony was reasonable, credible, and consistent. Furthermore, as stated above, we did not find respondent's witnesses believable. [15]
After consideration of the entire record, we find that *463 petitioner did not know of the Conveyor or JRK investments. Therefore, we conclude that petitioner did not know of the substantial understatement of tax on the 1980 and 1981 returns. 2. Reason to Know of the Understatement
We next decide whether petitioner had reason to know of the substantial understatement of tax for each year. The Court of Appeals for the Fifth Circuit, in a recent decision, wherein the standards as applied by the Tax Court and the Ninth Circuit in Bokum v. Commissioner, supra, and Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), revg. an Oral Opinion of this Court, respectively, were discussed, stated: Moreover, the general standard of inquiry in either approach is that which we stated in Sanders [v. United States], 509 F.2d [162] at 167 [(5th Cir. 1975)]: a spouse has "reason to know" of the substantial understatement if, at the time the tax return was signed, a reasonably prudent taxpayer in his or her position could be expected to know that the stated tax liability was erroneous or that further investigation was warranted. [Citations omitted.]
*464 Park v. Commissioner, 25 F.3d 1289, 1298 (5th Cir. 1994), affg. T.C. Memo. 1993-252. Significant factors in this decision are the taxpayer's intelligence, the taxpayer's level of involvement in the financial transactions which gave rise to the deductions, the "guilty" spouse's openness concerning these transactions, and the presence of lavish or unusual expenditures compared to the taxpayer's past standard of living. Price v. Commissioner, supra at 965; Sanders v. United States, 509 F.2d 162, 167 (5th Cir. 1975). Respondent, in essence, argues, inter alia, that the size of the deductions here involved, $ 77,164 and $ 79,628 for 1980 and 1981, respectively, was large enough to put petitioner on notice and cause her to question such deductions. We disagree and find that petitioner lacked reason to know of the understatements. Petitioner has a high school education. Petitioner did not attend college. Although the record reflects that petitioner held a job with a banking institution during the years at issue, petitioner was not required to have any tax, *465 bookkeeping, or accounting experience for purposes of her position at Capital Bank. At trial, petitioner's supervisor testified that petitioner was not required or trained to give tax advice and might have been fired if she had done so. Moreover, petitioner had no knowledge of Mr. Boyle's investments at issue here, and, as stated above, petitioner and Mr. Boyle led very separate financial lives, petitioner's sole involvement in the couple's financial affairs being limited to paying certain household expenses for which she provided the funds. While petitioner was the recipient of several gifts from Mr. Boyle during the years at issue, these gifts certainly were not extraordinary as compared with the taxable income reported on the 1980 and 1981 returns. Rather, petitioner and Mr. Boyle maintained a standard of living commensurate with their reported taxable income and did not live a lavish or extraordinary lifestyle. Furthermore, after consideration of the entire record, we believe that an obligation to inquire did not arise in this case because (1) the specific deductions involved herein, while included in a larger deduction [16] on the first page of each return, were hidden in *466 the recesses of their respective returns; (2) the returns in question were lengthy and complex, [17] and, as such, it would require some expertise in tax preparation to make sense of the information being reported; and (3) petitioner was aware that Mr. Kaps, the accountant, signed the 1980 and 1981 returns (thus indicating that the accountant was standing behind his preparation of the returns) prior to her execution of the 1980 return and prior to her authorizing Mr. Boyle to execute the 1981 return on her behalf. Chucas v. Commissioner, T.C. Memo. 1993-147. Additionally, Mr. Boyle had already executed the returns, and petitioner respected Mr. Boyle's business acumen.
*467 B. Equity of Holding Petitioner Liable
Lastly, we consider, under all of the facts and circumstances of this case, whether it would be inequitable to hold petitioner liable for the deficiency in tax for the years at issue. Sec. 6013(e)(1)(D). In deciding whether it is inequitable to hold a spouse liable for a deficiency, whether the spouse in fact had received substantial benefits, directly or indirectly, from the understatement of tax is taken into account. Purcell v. Commissioner, 86 T.C. 228 (1986), affd. 826 F.2d 470 (6th Cir. 1987). We note that such benefit may be found from transfers of property in later years but not to the extent that funds or property transferred constitute reasonable support. Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979). Petitioner did not receive any of the proceeds of the 1980 and 1981 tax refunds, which were received and misappropriated by Mr. Boyle. We have carefully considered the record herein, including the property petitioner received in the property settlement, payments made to or on behalf of petitioner after her separation from Mr. Boyle, *468 and petitioner's standard of living while married to Mr. Boyle, and, under all the facts and circumstances of this case, we conclude that it would be inequitable to hold petitioner liable for the underpayment of tax for the years 1980 and 1981. As to those years, petitioner was an innocent spouse. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Interest payable due to substantial underpayment attributable to tax motivated transactions.↩
2. 50 percent of the interest due on the deficiency.↩
1. Respondent and petitioner have agreed that, in the event petitioner is not entitled to innocent spouse relief pursuant to sec. 6013(e), and, as to 1981, is found to have filed a joint return with Frank G. Boyle (Mr. Boyle), see infra↩ note 2, petitioner will be liable for income tax deficiencies for the 1980 and 1981 taxable years in the amounts of $ 23,784 and $ 35,952.67, respectively. These amounts are based on respondent's determination that the deductions taken with respect to certain tax shelters, $ 77,164 relating to Mr. Boyle's investment in Conveyor Products, Ltd., in 1980 and $ 79,628 relating to Mr. Boyle's investment in JRK, Ltd., in 1981, should be disallowed.
2. The following was contained in the parties' stipulation: 80. Petitioner and Gordon [petitioner's husband, Mr. Boyle] filed a joint tax return for the taxable year 1981. However, if this Court determines in Frank G. Boyle v. Commissioner, Docket No. 1837-92, that Gordon and Virginia Boyle did not file a joint return for the taxable year 1981, then the petitioner and respondent do not stipulate that a joint tax return was filed for the taxable year 1981.
In Boyle v. Commissioner, T.C. Memo. 1994-294↩, we found that a joint return was filed by Mr. Boyle and petitioner herein.
3. The parties have stipulated that petitioner is not entitled to innocent spouse relief for the 1982 taxable year based on petitioner's failure to meet the percentage income requirement of sec. 6013(e)(4)↩.
4. Petitioner was hired as the vice president and manager of the facility located at Two Allen Center.↩
5. The first of these investments was a joint purchase of Allied Bancshares stock in 1968, and the second was a 1981 "couples" investment in a California winery named Wild Bunch Vineyards. Reference to these two investments, however, is only relevant, we find, to illustrate that the Boyles' financial lives were otherwise absolutely separate from each other. The facts surrounding this observation are illustrative: the Allied Bank investment was made 2 years into the marriage, and a joint investment did not occur again throughout the course of the marriage until the Wild Bunch Vineyards investment. The Wild Bunch Vineyards investment was a "couples" only investment opportunity, and we find that Mr. Boyle would not have included petitioner had this not been the case; furthermore, petitioner did not attend any informational meetings for this investment and instead was forced initially to rely on Mr. Boyle for information, the extent of her involvement being to sign a promissory note proffered to her by Mr. Boyle. Additionally, the funds used for this investment came solely from Mr. Boyle's personal bank account.↩
6. The deduction for the Conveyor Products, Ltd., investment, while included in a larger deduction on page 1, line 18, of the Boyles' 1980 Federal income tax return, was specifically set forth on the 25th page of a 32-page return.↩
7. The deduction for JRK, while included as part of a larger deduction on page 1, line 17, of the Boyles' 1981 return, was specifically set forth on the 34th page of a 43-page return.↩
8. The initials "JRK" stand for Jess R. Kaps (Mr. Kaps), Mr. Boyle's personal investment adviser and accountant during the years here at issue.↩
9. The record is replete with instances from the commencement of this case, of Mr. Boyle and his counsel refusing to cooperate with petitioner during her attempt to assemble and present her case. At trial, Mr. Boyle and respondent's two other witnesses, who happen to be close friends of Mr. Boyle, lacked credibility. Under cross-examination, these witnesses became hesitant and less certain about the specifics of their direct testimony. Therefore, we choose not to believe respondent's witnesses' inexact and incredible testimony.↩
10. While petitioner was aware Mr. Boyle took a trip to Colorado in 1981 to look at a gold mine, prior to his departure she had expressed disapproval of any such investment. We find that it was Mr. Boyle's tendency to keep his financial matters separate from petitioner, coupled with petitioner's expression of disapproval, that caused Mr. Boyle to hide his investment in the gold mine from petitioner. Furthermore, respondent asserts that a piece of fool's gold that Mr. Boyle brought back from this trip for petitioner, and which petitioner has to this day, should allow us to impute knowledge of this investment to petitioner. We refuse, in this instance, to find that an innocent souvenir from one spouse to another is sufficient to constitute actual or constructive knowledge of an investment that the recipient spouse did not otherwise know about.↩
11. See Boyle v. Commissioner, T.C. Memo. 1994-294↩.
12. See Boyle v. Commissioner, T.C. Memo. 1994-294↩, for the events leading up to and surrounding the execution of the 1981 return.
13. The record was unclear as to whether a refund was received at all in 1985.↩
14. The parties agree also that petitioner meets the statutory income requirements as specified by sec. 6013(e)(4)↩ for the years in question.
15. See Sturm v. Commissioner, T.C. Memo. 1993-172↩, wherein the Court afforded taxpayer-wife innocent spouse relief finding, inter alia, that taxpayer did not have actual knowledge of husband's investments, despite husband's and tax shelter promoter's testimony that taxpayer was privy to the investment, because the testimony of the husband and the promoter to that effect was not credible.
16. Numerous unchallenged deductions were claimed on the returns, including depreciation and depletion items, together with investment tax credits.↩
17. Mr. Boyle was involved in no less than 13 individual investments in 1980 and 19 investments in 1981. These included, inter alia, bank deposits, stock, rental properties, and partnerships, the majority of which were not challenged by respondent.↩